[Cite as *State v. Brown*, 2014-Ohio-1317.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2013-03-043 |
| | : | O P I N I O N |
| - vs - | | 3/31/2014 |
| | : | |
| DAMON TRECEAN BROWN, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2012-08-1373

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Scott N. Blauvelt, 246 High Street, Hamilton, Ohio 45011, for defendant-appellant

**HENDRICKSON, J.**

{¶ 1}  Defendant-appellant, Damon Trecean Brown, appeals his convictions and sentence in the Butler County Court of Common Pleas for having weapons while under disability and the illegal use or possession of drug paraphernalia.  For the reasons discussed below, we affirm appellant's convictions and sentence.

{¶ 2}  On September 19, 2012, appellant was indicted for having weapons while under disability in violation of R.C. 2923.13(A)(3) (count one), resisting arrest in violation of

R.C. 2921.33(A) (count two), obstructing official business in violation of R.C. 2921.31 (count three), the illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1) (count four), and possession of marijuana in violation of R.C. 2925.11 (count five). The charges arose out of events that occurred shortly before 3:00 a.m. on July 11, 2012 in Middletown, Butler County, Ohio, wherein officers from the Middletown Police Department were called to an apartment on Caprice Drive after receiving reports of a woman throwing rocks through the apartment's windows. Upon arriving at the apartment, officers found Shavonne Singletary "outside, crying, intoxicated and bleeding profusely on the hands and arms." Singletary had thrown rocks through the front window of the apartment, destroying the window, the blinds, and a TV. After restraining Singletary, the officers knocked on the front door of the apartment to investigate the situation, and Maya Hackney answered the door. A visibly upset and scared Hackney reported she had been hiding in the closet and thought that "the resident of the house had fled the house."

{¶ 3} Lieutenant Jim Cunningham conducted a protective sweep of the apartment. The two-bedroom apartment consisted of two stories, with both bedrooms located upstairs. When Cunningham went upstairs, he found appellant in an unfurnished bedroom, "hiding behind the left * * * side of the door frame." Cunningham gave appellant a "quick" pat down, escorted him downstairs, and handed him over to Officer Andrew Kaylor. While Cunningham and Kaylor talked with appellant, Officer Sam Allen went upstairs to finish the protective sweep. Allen entered the second bedroom, which was furnished, and found a holstered gun lying in plain sight on the bed.

{¶ 4} While appellant was talking with Kaylor and Cunningham downstairs, appellant reached into his pocket to pull something out and Kaylor attempted to retrieve the item. Appellant pushed Kaylor's arm away and fled the room, running into a utility room. Appellant attempted to barricade himself in the utility room, but the officers were able to force the door

open. Appellant resisted being apprehended, refused to put his hands behind his back, and declined to spit out an item he was chewing on. Appellant was eventually handcuffed, placed under arrest, and removed from the apartment. A search of appellant's person led to the discovery of over $2,000 and a small amount of marijuana.

{¶ 5} After appellant was placed in police custody, a warrant was obtained to search the apartment. During execution of the warrant, the following items were collected as evidence: Glad sandwich baggies, baggies of marijuana, marijuana cigarettes, digital scales, .38 caliber ammunition, .45 caliber ammunition, .25 caliber ammunition, a bag of gelatin capsules, a razor blade with residue on it, a receipt for Damon Brown from the Middletown Municipal Court, a Taurus .38 caliber handgun, $406, cell phones, personal photographs, and miscellaneous documents, including a receipt in appellant's name for work done on a vehicle at a Midas automobile repair shop located in Middletown, Ohio and a fee agreement between appellant and attorney Christopher J. Pagan. This evidence was collected from the furnished bedroom, which officers described as containing only men's clothing, hats, and shoes. Although the apartment was leased in appellant's sister's name, Anisha Brown, officers did not locate any clothing or "anything [else] belonging to a female" in the residence.

{¶ 6} Select evidentiary items were later submitted to the Bureau of Criminal Investigation and Identification (BCI) for testing. Among these items were the razor blade, the holstered handgun, and two baggies of marijuana. Following testing, BCI issued a report stating the razor blade contained trace amounts of heroin and the two baggies of marijuana weighed 27.5 grams and 27.3 grams, respectively. The report further stated that while the handgun was found to be operable, neither the handgun nor the holster contained latent prints of value for fingerprint identification purposes.

{¶ 7} A jury trial was held in January 2013. At this time, the state dismissed count five of the indictment. Appellant and the state then entered stipulations as to the

admissibility, authenticity, and accuracy of the BCI report and to a prior felony conviction of appellant's involving the illegal possession or trafficking in drugs of abuse. Thereafter, the state presented its case-in-chief and called as its witnesses Lieutenant Cunningham, Officer Kaylor, Officer Allen, Officer Justin Camper, and Detective Mark Hoyle of the Middletown Police Department. Following the state's presentation of evidence, appellant made a Crim.R. 29 motion, which was denied by the trial court. Appellant then rested his defense without calling any witnesses.

{¶ 8} The jury returned guilty verdicts on counts one through four of the indictment. A sentencing hearing was held on February 28, 2013, at which time the trial court imposed a 36-month prison term. Appellant timely appealed, raising three assignments of error. For ease of discussion, appellant's first and second assignments of error shall be addressed together.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT CONVICTIONS FOR COUNTS ONE AND FOUR.

{¶ 11} Assignment of Error No. 2:

{¶ 12} THE VERDICTS FOR COUNTS ONE AND FOUR WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} In his first and second assignments of error, appellant challenges his convictions for having weapons while under disability and the illegal use or possession of drug paraphernalia, arguing the convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Specifically, appellant argues the state failed to prove beyond a reasonable doubt the respective "possession" element of each offense. Appellant contends the evidence introduced at trial demonstrated he was not a resident of the apartment and he was not in actual or constructive possession of the handgun

- 4 -

or the drug paraphernalia.

{¶ 14} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 15} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in

extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387. Furthermore, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 16} Appellant was convicted of the illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), which provides that "no person shall knowingly use, or possess with purpose to use, drug paraphernalia." Appellant was also convicted of having weapons while under disability in violation of R.C. 2923.13(A)(3), which provides that "no person shall knowingly acquire, have, carry, or use any firearm * * * if * * * [t]he person * * * has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." To "have" a firearm within the meaning of R.C. 2923.13(A), a person must have actual or constructive possession of the firearm. *State v. Leide*, 12th Dist. Butler No. CA2005-08-363, 2006-Ohio-2716, ¶ 29. Both offenses, therefore, require the state to prove "possession" as an element of each crime.

{¶ 17} Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). A person may be in actual or constructive possession of a substance. *State v. Arrone*, 12th Dist. Madison No. CA2008-04-010, 2009-Ohio-1456, ¶ 13, citing *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976). "An accused has 'constructive possession' of an item when the accused is conscious of the item's presence and is able to exercise dominion and control over it, even if the item is not within the accused's immediate physical possession." *State v. Jester*, 12th Dist. Butler No. CA2010-10-264, 2012-Ohio-544, ¶ 25. "[P]ossession of a firearm in violation of R.C. 2923.13 may be inferred when the defendant has exercised

dominion and control over the *area* where the firearm was found." (Emphasis sic.) *State v. Sebastian*, 4th Dist. Highland No. 08CA19, 2009-Ohio-3117, ¶ 35. Likewise, possession of drug paraphernalia in violation of R.C. 2925.14(C)(1) may be inferred when the evidence demonstrates that the defendant was in close proximity to the items and that items were readily accessible. *Jester* at ¶ 25; *State v. Gaefe*, 12th Dist. Clinton No. CA2001-11-043, 2002-Ohio-4995, ¶ 10 ("Although mere presence in the vicinity of drug paraphernalia does not prove dominion and control, readily accessible drug paraphernalia in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession"). Moreover, ownership of the items "need not be proven to establish constructive possession." *Arrone* at ¶ 13.

{¶ 18} After reviewing the entire record, weighing inferences, and examining the credibility of witnesses, we find that appellant's convictions for the illegal use or possession of drug paraphernalia and having weapons while under disability were not against the manifest weight of the evidence and were supported by sufficient evidence. The state presented testimony and evidence from which the jury could have found all elements of the offenses, including the challenged "possession" elements, proven beyond a reasonable doubt.

{¶ 19} Here, circumstantial evidence demonstrated appellant constructively possessed the firearm and drug paraphernalia. Officers described appellant hiding upstairs behind the door frame of a bedroom. In close proximity to appellant was the other bedroom, which contained the firearm and drug paraphernalia, all of which were lying in plain view and were subject to appellant's dominion and control.[1] At the time he was arrested, appellant had a large sum of cash and a baggie of marijuana on his person. The furnished bedroom where

---

1. In the furnished bedroom, the firearm was discovered lying on the center of the bed, a set of digital scales was found on the floor, and another set of digital scales with drug residue on it and marijuana cigarettes were near the TV – all of which were in plain view.

the drug paraphernalia and firearm were located also contained a significant sum of cash, marijuana, and baggies. Such evidence gives rise to a reasonable inference that appellant possessed the contraband items.

{¶ 20} Moreover, the jury heard testimony that appellant was the resident of the apartment. Although the apartment was leased in the name of "Anisha Brown" and appellant often told others he resided at a Dayton address, there was uncontroverted evidence presented that the residence contained only male clothing and belongings, and that nothing "belonging to a female" was found inside the apartment. Further, the evidence demonstrated receipts belonging to appellant were found lying on the floor in the furnished bedroom next to the drug paraphernalia. From such evidence, the jury could have determined appellant resided at the apartment and he had dominion and control over the firearm and drug paraphernalia. As the trier of fact, the jury was in the best position to weigh credibility and determine these issues. It is well-established that when "conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Guzzo*, 12th Dist. Butler No. CA2003-09-232, 2004-Ohio-4979, ¶ 13.

{¶ 21} In support of his argument that his convictions are against the manifest weight of the evidence and that there was insufficient evidence to establish "possession," appellant cites to *State v. Cooper*, 3d Dist. Marion No. 9-06-49, 2007-Ohio-4937; and *State v. Burney*, 10th Dist. Franklin No. 11AP-1036, 2012-Ohio-3974. We find both cases to be distinguishable from the facts of the present case.

{¶ 22} In *Cooper*, the Third District reversed a defendant's convictions for possession of cocaine and heroin for insufficient evidence. *Id.* at ¶ 1. There, Cooper was sitting in the front, passenger seat of a motor vehicle occupied by two other people: the driver and a backseat passenger. *Id.* at ¶ 4. After a traffic stop and subsequent search of the vehicle,

officers found heroin and cocaine located in the rear passenger seat pocket. *Id.* The Third District reversed Cooper's conviction for possession of the drugs, holding the state "failed to present evidence that Cooper was conscious that the heroin and cocaine were located in the pocket behind his seat." *Id.* at ¶ 29. Further, "[t]here was no evidence that a person seated in the front passenger seat of the vehicle would be physically capable of reaching an object located in the pocket on the back side of the seat in which he was sitting, and certainly no evidence that Cooper had made any attempt to do so." *Id.* As such, there was no evidence that Cooper knowingly exerted dominion or control over the drugs. *Id.*

{¶ 23} In *Burney*, the Tenth District reversed a defendant's conviction for having weapons while under disability after concluding there was insufficient evidence to establish the defendant had actual or constructive possession of firearms found in the residence he had previously stayed in with his mother and brother. *Burney* at ¶ 32. There, a firearm had been hidden under a couch and subsequent DNA testing of the gun demonstrated neither Burney nor his brother could be excluded as contributors to the DNA mixture. *Id.* at ¶ 7. The Tenth District held there was insufficient evidence establishing Burney had "possession" of the firearm as the evidence indicated multiple adults lived in or had access to the house and the gun was not in plain view within a common area of the home, but instead was hidden under furniture. *Id.* at ¶ 29. Further, the DNA evidence did not establish that Burney had touched the gun while it was in his mother's home, making him aware of its presence, or that he had touched it after his "disability came to be." *Id.* at ¶ 31.

{¶ 24} Here, unlike in *Cooper or Burney*, the firearm and drug paraphernalia found by officers were in plain sight, the residence had only male belongings in it, appellant was discovered hiding upstairs in close proximity to the items, receipts in his name were discovered near the drug paraphernalia, and there were items found on appellant at the time of his arrest which tended to connect him to the bedroom where the contraband was located.

- 9 -

From such evidence, the jury was entitled to determine that appellant knew where the contraband was located and he had dominion and control of the firearm and drug paraphernalia. *See, e.g., State v. Jester*, 2012-Ohio-544 at ¶ 23-27; *State v. Arrone*, 2009-Ohio-1456 at ¶ 11-16.

{¶ 25} Accordingly, given the evidence presented, it is clear that the jury did not lose its way and create such a manifest miscarriage of justice that appellant's convictions for the illegal use or possession of drug paraphernalia and having weapons while under disability must be reversed and a new trial ordered. As appellant's convictions were not against the manifest weight of the evidence, we necessarily conclude that the state presented sufficient evidence to support the jury's finding of guilt. Appellant's first and second assignments of error are, therefore, overruled.

{¶ 26} Assignment of Error No. 3:

{¶ 27} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN THE IMPOSITION OF COURT COSTS.

{¶ 28} In his third assignment of error, appellant argues the trial court erred by failing to advise him, in accordance with R.C. 2947.23(A)(1), that he could be ordered to perform community service if he failed to pay court costs. Appellant argues that "judgment should be modified to eliminate the potential for community service" or, alternatively, "the matter should be remanded to the trial court for the proper imposition of costs pursuant to R.C. 2947.23(A)(1)" in accordance with our decision in *State v. Cobb*, 12th Dist. Butler CA2012-07-132, 2013-Ohio-2390. The state, however, argues that any failure by the trial court to notify appellant that he could be ordered to perform community service if he fails to pay the costs of prosecution is not reversible error pursuant to an amendment to R.C. 2947.23(A), which took effect on September 28, 2012.

{¶ 29} At the outset, we note R.C. 2947.23(A)(1) has recently undergone multiple

revisions. In *Cobb*, this court found that under the version of R.C. 2947.23(A)(1) in effect at the time of the defendant's sentencing, the trial court committed plain error when it imposed court costs but failed to advise the defendant that he may be ordered to perform community service if he failed to pay the costs. *Id.* at ¶ 3, citing *State v. Weathers*, 12th Dist. Butler No. CA2012-02-036, 2013-Ohio-1104, ¶ 19.[2] As a result, we reversed that portion of Cobb's sentence ordering him to pay court costs and remanded the matter to the trial court for the proper imposition of court costs in accordance with R.C. 2947.23(A)(1). *Id.* at ¶ 6, citing *Weathers* at ¶ 25.

{¶ 30} Since the defendant in *Cobb* was sentenced, R.C. 2947.23 has undergone two revisions. The statute was first revised by 2012 Am.Sub.S.B. 337 (S.B. 337), effective September 28, 2012, and then later revised by 2012 Am.Sub.H.B. 247 (H.B. 247), effective March 22, 2013. Appellant was sentenced on February 28, 2013, prior to H.B. 247's enactment. The version of the statute in effect at the time of appellant's sentencing provided the following:

---

2. { a} At the time Cobb was sentenced, the version of R.C. 2947.23 in effect provided the following:

{ b} (A)(1) In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution, including any costs under section 2947.231 of the Revised Code, and render a judgment against the defendant for such costs. At the time the judge or magistrate imposes sentence, the judge or magistrate shall notify the defendant of both of the following:

{ c} (a) If the defendant fails to pay that judgment or fails to timely make payments towards that judgment under a payment schedule approved by the court, the court may order the defendant to perform community service in an amount of not more than forty hours per month until the judgment is paid or until the court is satisfied that the defendant is in compliance with the approved payment schedule.

{ d} (b) If the court orders the defendant to perform the community service, the defendant will receive credit upon the judgment at the specified hourly credit rate per hour of community service performed, and each hour of community service performed will reduce the judgment by that amount.

{ e} Former R.C. 2947.23 (2012 Am.Sub.H.B. 268 version, effective May 22, 2012).

(A)(1)(a)  In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution, including any costs under section 2947.231 of the Revised Code, and render a judgment against the defendant for such costs.  *At the time the judge or magistrate imposes sentence, the judge or magistrate shall notify the defendant of both of the following*:

(i)  If the defendant fails to pay the judgment or fails to timely make payments towards that judgment under a payment schedule approved by the court, the court may order the defendant to perform community service in an amount of not more than forty hours per month until the judgment is paid or until the court is satisfied that the defendant is in compliance with the approved payment schedule.

(ii)  If the court orders the defendant to perform the community service, the defendant will receive credit upon the judgment at the specified hourly credit rate per hour of community service performed, and each hour of community service performed will reduce the judgment by that amount.

(b)  *The failure of a judge or magistrate to notify the defendant pursuant to division (A)(1)(a) of this section does not negate or limit the authority of the court to order the defendant to perform community service if the defendant fails to pay the judgment described in that division or to timely make payments towards that judgment under an approved payment plan.*

(Emphasis added.)  Former R.C. 2947.23 (S.B. 337 version).[3]  Accordingly, pursuant to R.C. 2947.23(A)(1)(a), the trial court was required to notify appellant that his failure to pay the imposed court costs could result in an order requiring him to perform community service in an amount of not more than 40 hours a month.

{¶ 31}  At the February 28, 2013 sentencing hearing, the trial court ordered that court costs be paid, but failed to specifically advise appellant that the failure to pay such costs

---

3.  The current statute, as modified by H.B. 247, provides that notification of possible court-ordered community service need only be given "[i]f the judge or magistrate imposes a community control sanction or other nonresidential sanction."  R.C. 2947.23(A)(1)(a).  Both S.B. 337 and H.B. 247 set forth in R.C. 2947.23(A)(1)(b) that a court's failure to notify a defendant that he may be ordered to perform community service if he fails to pay court costs "does not negate or limit the authority of the court to order the defendant to perform community service if the defendant fails to pay the judgment."

could result in court-ordered community service of up to 40 hours a month. As discussed above, under previous versions of R.C. 2947.23(A)(1), the failure to advise appellant of the possibility of court-ordered community service resulted in reversible error. *See Cobb*, 2013-Ohio-2390 at ¶ 6; *Weathers*, 2013-Ohio-1104 at ¶ 25. However, pursuant to S.B. 337's amendment to the statute, a court's failure to notify a defendant that he may be ordered to perform community service if he fails to pay court costs "does not negate or limit the authority of the court to order the defendant to perform community service if the defendant fails to pay the judgment." R.C. 2947.23(A)(1)(b). The plain language of the statute provides that a trial court's failure to comply with R.C. 2947.23(A)(1)(a) does not later prevent the court from imposing community service. "[T]he Legislature specifically intended to allow courts to order community service for the failure to pay court costs regardless of whether the court informed the defendant of such." *State v. Huntsman,* 7th Dist. Monroe No. 13 MO 6, 2014-Ohio-440, ¶ 14. See also *State v. Lane*, 12th Dist. Butler No. CA2013-05-074, 2014-Ohio-562, ¶ 37 (holding that pursuant to language in H.B. 247 mirroring language in S.B. 337, "even if the trial court had sentenced [the defendant] to a community control sanction and failed to notify him that he could be ordered to perform community service in lieu of paying court costs, this would not affect the ability of the court to require [the defendant] to perform community service"). Consequently, under the version of R.C. 2947.23(A)(1)(b) in effect at the time of appellant's sentencing, the trial court's failure to advise appellant of the possibility of court-ordered community service would not prohibit the court from later ordering community service should appellant fail to pay his court costs.

{¶ 32} We therefore conclude that the trial court did not err in failing to notify appellant at the sentencing hearing that it could order him to perform community service in the event he failed to pay imposed court costs. Given the legislative revisions to R.C. 2947.23, we find that the remedy proscribed in *Cobb* no longer applies to those defendants who were

sentenced on or after September 28, 2012.

{¶ 33} Accordingly, for the reasons discussed above, appellant's third assignment of error is overruled.

{¶ 34} Judgment affirmed.

RINGLAND, P.J., and M. POWELL, J., concur.