[Cite as *State v. Sullivan*, 2014-Ohio-1687.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.   CA2013-05-086 |
| | : | O P I N I O N |
| - vs - | | 4/21/2014 |
| | : | |
| ANGELA B. SULLIVAN, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 13 CRB 00555

Geoffrey Modderman, Hamilton City Prosecutor, 345 High Street, 2nd Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Scott N. Blauvelt, 246 High Street, Hamilton, Ohio 45011, for defendant-appellant

**HENDRICKSON, J.**

{¶ 1}   Defendant-appellant, Angela B. Sullivan, appeals her conviction and sentence in the Hamilton Municipal Court for cruelty to a companion animal, a misdemeanor of the second degree.  For the reasons discussed below, we affirm appellant's conviction and sentence.

{¶ 2}   On February 8, 2013, Butler County Humane Officers Julie Holmes and Kurt Merbs responded to a residence on Vine Street in Hamilton, Ohio based upon concerns

about an animal at that location. The officers had received a phone call from James Combs, who indicated he was moving into the residence and believed the former owner had abandoned a dog on the property. Upon arriving at the residence, the officers found a mix-breed pit bull chained inside a fenced, outdoor area of the property. The only shelter for the dog consisted of an overhang at the back of the house, some straw spread on the ground, and a blanket. The dog appeared slightly dehydrated and significantly underweight, with its ribs, backbone, and hipbones visible to the officers. The officers observed water and food sitting out for the dog.

{¶ 3} While checking on the dog, the officers encountered appellant, who had arrived at the property to pick up personal belongings she had left at the residence. At this time, appellant informed the officers she had previously lived at the residence, but had been forced to move out after she and her boyfriend broke up. Appellant told the officers she had been the dog's owner for "about two years" but she had given the dog away two weeks ago. Appellant claimed she had given the dog to "Farmer Joe," a man whose last name, phone number, and address she could not recall. Appellant then gave officers conflicting stories about when she was last at the property. She first claimed she had not been on the property in two weeks, but then later stated she came to the property every day. Appellant told the officers she had arranged for her former roommate, Combs, to care for the dog until "Farmer Joe" could come get the dog or arrangements to take the dog to "Farmer Joe" were made.

{¶ 4} Ultimately, the dog was taken into custody by the officers on February 8, 2013, and appellant was cited for cruelty to a companion animal in violation of R.C. 959.131(C)(2) and for the failure to register the dog in violation of R.C. 955.21. A bench trial was held on the charges on April 15, 2013. At this time, the state presented the testimony of Officer Holmes, Officer Merbs, and of Dalton Shroyer, an associate veterinarian who had completed an examination of the dog. Merbs and Holmes testified as to the condition of the dog upon

their arrival at the scene and about appellant's inconsistent statements regarding when she was last at the property, who owned the dog, and who was supposed to be caring for the dog. Pictures of the dog, depicting its condition at the time officers found it on February 8, 2013, were entered into evidence.

{¶ 5} Shroyer then testified as to the condition of the dog on February 8, 2013. Although there were no signs of frostbite and no evidence of physical assault, Shroyer stated the dog was, "very, very emaciated" and was nearly 20 pounds underweight. The dog had a fever and upper respiratory infection, was dehydrated, was covered in dirt and fleas, and was so weak that it had trouble walking around and getting up after it laid down. In Shroyer's expert opinion, "[i]f the dog had been provided adequate food and water, there would be no reason for the weight loss to the degree * * * [seen] in the animal." Shroyer further testified that after receiving medication, food, and water, the dog's health recovered.

{¶ 6} Following the presentation of the state's case-in-chief, appellant made a Crim.R. 29 motion for acquittal. The trial court granted the motion as to the failure to register charge, but denied the motion for acquittal on the cruelty to a companion animal charge. Appellant then took the stand in her own defense. Appellant testified she had lived at the residence on Vine Street with her boyfriend, Matthew Bowling, her two children, and Combs until Thanksgiving of 2012, when she was forced to leave the residence after Bowling ended their relationship. Appellant claimed she had been forced to leave with only the "clothes on [her] back" and she had been unable to take the dog. She stated that the dog was an "outside dog" and she had always left him outside with bales of hay and a blanket for protection and comfort. She testified that she had asked Combs to feed and care for the dog while she had made arrangements to have the dog taken to a farm. According to appellant, Combs agreed to care for the dog and he was supposed to contact Farmer Joe and ask him to come get the dog. She testified she had only been back to the Vine Street residence two

- 3 -

times since she had been kicked out, and, prior to February 8, 2013, she had not seen the dog since before Thanksgiving 2012. Appellant did not call any additional witnesses in her defense.

{¶ 7} The trial court ultimately found appellant guilty of cruelty to a companion animal, stating:

> I find that the state has established beyond a reasonable doubt every possible way you could violate [R.C. 959.131(C)(2)]. The defendant um - - left the dog and just left it. And she left the residence and left the dog there and the dog was uh - - emaciated and um - - did not have appropriate place for it to stay [sic]. It was sick. It got better right when the police - - right when it was taken to the vet um - - after it had some medicine and after it was fed. So I find the defendant to be guilty of that offense. Her testimony was not credible. It was in conflict with what the officers testified about what her statements were and I find the officers testimony [sic] to be credible in that case the animal control officers. And so that's the basis for my decision in the case.

{¶ 8} On March 15, 2013, appellant was sentenced to 90 days in jail, with 80 days stayed. The court also imposed a $400 fine, assessed court costs, and placed appellant on a two-year term of nonreporting community control.

{¶ 9} Appellant timely appealed, raising two assignments of error.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE GUILTY VERDICT FOR A VIOLATION OF R.C. 959.131(C)(2) WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 12} In her first assignment of error, appellant argues her conviction for cruelty to a companion animal is against the manifest weight of the evidence. Appellant contends the state failed to prove beyond a reasonable doubt that she "confined" the dog or that she was the "custodian or caretaker" of the dog within the meaning of R.C. 959.131(C)(2).

{¶ 13} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather

- 4 -

than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 14} Appellant was convicted of cruelty against a companion animal in violation of R.C. 959.131(C)(2), which provided:

> (C) No person who confines or who is the custodian or caretaker of a companion animal shall negligently do any of the following:
>
> * * *
>
> (2) Deprive the companion animal of necessary sustenance, confine the companion animal without supplying it during the confinement with sufficient quantities of good, wholesome food and water, or impound or confine the companion animal without affording it, during the impoundment or confinement, with access to shelter from heat, cold, wind, rain, snow or excessive direct sunlight, if it can reasonably be expected that the companion animal would become sick or suffer in any other way as a result of or due to the deprivation, confinement, or impoundment or confinement in any of those specified manners.

Former R.C. 959.131(C)(2). The terms "confine," "custodian," and "caretaker" are not defined by the statute. As such, the terms will be accorded their common, ordinary, plain,

everyday meanings. *State v. Martin*, 12th Dist. Brown No. CA99-09-026, 2000 WL 1145465, * 5 (Aug. 14, 2000); *Sharp v. Union Carbide Corp.*, 38 Ohio St.3d 69, 70 (1988). To "confine" means "to hold within bounds" or "to keep to a certain place or to a limited area." *Webster's Third New International Dictionary* 476 (1993). A "custodian" is "one that guards and protects or maintains" or "one entrusted officially with guarding and keeping." *Id.* at 559. A "caretaker" is "one that is placed * * * in charge of the upkeep * * * and protection of the house * * * of an owner who may be absent." *Id.* at 339.

{¶ 15} In this case, the trial court, as the trier of fact, heard evidence that appellant was the owner of the dog, appellant had "always" held or kept the dog outside in the fenced-in area, and appellant had left the dog behind when she left the residence in November 2012. The trial court also heard conflicting stories about the frequency in which appellant had returned to the apartment, either every day since being kicked out of the residence or only one time prior to February 8, 2013, and conflicting stories about who was supposed to be caring for the dog, either the "new owner, Farmer Joe," or Combs. The trial court further heard evidence from a veterinarian that the dog was emaciated, dehydrated, and sick when it was found. Shroyer offered his expert opinion that, "[i]f the dog had been provided adequate food and water, there would be no reason for the weight loss to the degree * * * [seen] in the animal."

{¶ 16} From the evidence presented, the trial court was entitled to find appellant was the individual who "confined" the dog without providing it with sufficient quantities of good, wholesome food and water. It was within the province of the judge, as the trier of fact, to believe or disbelieve the evidence presented by the witnesses. *State v. Meyers*, 12th Dist. Butler CA2004-09-219, 2005-Ohio-4919, ¶ 12. The judge was in the best position to weigh evidence and assess witness' credibility. *Id.* The evidence offered by the state, including the photos of the dog and the testimony of Homes, Merbs, and Shroyer, supports the trial court's

verdict. "It is well-established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶ 17} Given the evidence before the trial court, we find that appellant's conviction for cruelty to a companion animal was not against the manifest weight of the evidence. Appellant's first assignment of error is, therefore, overruled.

{¶ 18} Assignment of Error No. 2:

{¶ 19} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN THE IMPOSITION OF COURT COSTS.

{¶ 20} In her second assignment of error, appellant argues the trial court erred by failing to advise her at the sentencing hearing that she could be ordered to perform community service if she failed to pay court costs, in accordance with R.C. 2947.23(A)(1). Appellant argues that "judgment should be modified to eliminate the potential for community service" or, alternatively, "the matter [should] be remanded to the trial court for the proper imposition of costs pursuant to R.C. 2947.23(A)(1)."

{¶ 21} R.C. 2947.23 has recently undergone multiple revisions. The most current version of the statute, enacted on March 22, 2013 by 2012 Am.Sub.H.B. 247 (H.B. 247), was in effect at the time of appellant's May 15, 2013 sentencing. The statute provides:

> (A)(1)(a) In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution, including any costs under section 2947.231 of the Revised Code, and render a judgment against the defendant for such costs. *If the judge or magistrate imposes a community control sanction or other nonresidential sanction, the judge or magistrate, when imposing the sanction*, shall notify the defendant of both of the following:
>
> > (i) If the defendant fails to pay that judgment or fails to timely make payments towards that judgment under a

- 7 -

payment schedule approved by the court, the court may order the defendant to perform community service in an amount of not more than forty hours per month until the judgment is paid or until the court is satisfied that the defendant is in compliance with the approved payment schedule.

(ii) If the court orders the defendant to perform the community service, the defendant will receive credit upon the judgment at the specified hourly credit rate per hour of community service performed, and each hour of community service performed will reduce the judgment by that amount.

(b) *The failure of a judge or magistrate to notify the defendant pursuant to division (A)(1)(a) of this section does not negate or limit the authority of the court to order the defendant to perform community service if the defendant fails to pay the judgment described in that division or to timely make payments toward that judgment under an approved payment plan.*

(Emphasis added.) R.C. 2947.23.

{¶ 22} Appellant's sentence included a ten-day jail term, two years of community control, and court costs. As appellant received a community control sanction, the trial court should have advised her under R.C. 2947.23(A)(1)(a) that the failure to pay court costs could result in court-ordered community service of up to 40 hours a month. However, pursuant to R.C. 2947.23(A)(1)(b), the court's failure to advise appellant of the possible community service "does not negate or limit the authority of the court to order the defendant to perform community service if the defendant fails to pay the judgment." The plain language of the statute provides that a trial court's failure to comply with R.C. 2947.23(A)(1)(a) does not later prevent the court from imposing community service. *See* R.C. 2947.23(A)(1)(b). As we have previously acknowledged, by enacting R.C. 2947.23(A)(1)(b), "the Legislature specifically intended to allow courts to order community service for the failure to pay court costs regardless of whether the court informed the defendant of such." *State v. Brown*, 12th Dist. Butler No. CA2013-03-043, 2014-Ohio-1317, ¶ 31, citing *State v. Huntsman*, 7th Dist.

- 8 -

Monroe No. 13 MO 6, 2014-Ohio-440, ¶ 14. Consequently, there is no longer a need to reverse and remand for resentencing when the sentencing error involves the failure to notify a defendant under R.C. 2947.23(A)(1)(a) of possible community service for neglecting to pay imposed court costs. *See id.* at ¶ 32.

**{¶ 23}** We therefore conclude that the trial court did not err in failing to notify appellant at the sentencing hearing that it could order her to perform community service in the event she failed to pay imposed court costs. *See Brown* at ¶ 31-32; *State v. Lane*, 12th Dist. Butler No. CA2013-05-074, 2014-Ohio-562, ¶ 37. Appellant's second assignment of error is overruled.

**{¶ 24}** Judgment affirmed.

RINGLAND, P.J., and S. POWELL, J., concur.