[Cite as *State v. Whitfield*, 2025-Ohio-4957.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 24AP-325 |
| | | (M.C. No. 2023 ERB 71891) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Larisa Whitfield, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 30, 2025

**On brief:** *Zachary M. Klein*, City Attorney, *Melanie R. Tobias-Hunter*, *Orly Ahroni*, *Dave Pelletier*, and *Ryan M. Pelfrey*, for appellee. **Argued:** *Ryan M. Pelfrey*.

**On brief:** *Reckard Law LLC*, and *Collin P. Finn*, for appellant. **Argued:** *Collin P. Finn*.

APPEAL from the Franklin County Municipal Court

JAMISON, P.J.

{¶ 1} Defendant-appellant, Larisa Whitfield, appeals a judgment of the Franklin County Municipal Court convicting and sentencing her for one count of violating R.C. 959.131(D)(3). For the following reasons, we affirm that judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On June 14, 2023, Columbus Humane received a complaint that two dogs had been left outside of the residence at 24 South Princeton Avenue ("Princeton Avenue residence") without adequate shelter. Hailee Walker, a humane agent employed by Columbus Humane, visited the Princeton Avenue residence on June 18, 2023 to investigate the complaint. Agent Walker described the Princeton Avenue residence as a single unit in a brick, multi-unit building. In the back of the residence, Agent Walker found two pit bull-

type dogs on an eight-foot by ten-foot, partially fenced patio. Both dogs were tethered to a spindle of the stairs leading to the backdoor of the residence. The tethers were tangled around the spindle. A flimsy plastic blue tarp was draped over the fence surrounding one side of the patio, apparently in an attempt to give the dogs some kind of shelter. After examining the blue tarp, Agent Walker determined that it was inadequate to protect the dogs from heat, rain, snow, wind, or excessive sunlight.

{¶ 3} Agent Walker knocked on the front door of the Princeton Avenue residence, but no one answered. She placed a notice on the front door that requested the dogs' owner and/or caretaker contact Columbus Humane to discuss the June 14, 2023 complaint and the inadequate shelter provided for the dogs. No one responded to Columbus Humane regarding the notice. About six hours after Agent Walker left the Princeton Avenue residence on June 18, 2023, Columbus Humane received a complaint that the dogs remained outside.

{¶ 4} Sean Dundar, the senior humane agent for Columbus Humane, visited the Princeton Avenue residence on June 20, 2023 to follow up on both the June 14 and 18, 2023 complaints. When Agent Dundar initially drove up to the residence, he saw the dogs outside. Whitfield, however, brought the dogs inside as Agent Dundar parked the Columbus Humane van.

{¶ 5} On June 30, 2023, Columbus Humane received another complaint that the dogs were outside of the Princeton Avenue residence without adequate shelter. Humane Agent Emily Nelson responded to that complaint on July 1, 2023. Agent Nelson found the two dogs on the back patio, tethered to a stair spindle, with only the blue tarp for shelter. At that time, the temperature was 82 degrees Fahrenheit. Although the dogs had access to food, they did not have any water. One of the dogs was panting, which Agent Nelson attributed to heat exhaustion. Because it was hot and one dog was panting, Agent Nelson gave both dogs water. The dogs drank the water quickly, which indicated that they were thirsty.

{¶ 6} Agent Nelson knocked on the front door of the Princeton Avenue residence, but no one answered. Agent Nelson posted a notice on the front door requesting the dogs' owner and/or caretaker contact Columbus Humane to discuss the July 1, 2023 complaint and the failure to provide adequate shelter and water. No one responded to the notice.

{¶ 7}   Agent Dundar returned to the Princeton Avenue residence on July 2, 2023 to ensure that the dogs were not confined outside without adequate shelter.  As Agent Dundar arrived at the residence, he saw the dogs outside.  Whitfield then exited the residence and brought the dogs inside. Agent Dundar stopped Whitfield and spoke with her.  Agent Dundar explained his "concerns for the animals being left outside habitually without access to shelter," and he told Whitfield that "under Ohio law, animals are required to be afforded . . . shelter from the elements." (Tr. Vol. II at 199.)  According to Agent Dundar, Whitfield stated that "she would try to get doghouses for [the dogs] so that they would have adequate shelter out there." *Id.* at 200.

{¶ 8}   Agent Nelson visited the Princeton Avenue residence again on July 11, 2023. Agent Nelson found the dogs outside on the back patio "with the same type of a setup" that she saw on July 1, 2023, except they had access to water. *Id.* at 179-180.  During this visit, Agent Nelson spoke with Whitfield's son and told him that Columbus Humane would be following up to ensure that the dogs had adequate shelter when confined outside.

{¶ 9}   On July 13, 2023, Columbus Humane received a complaint stating that a vehicle had hit and injured one of the dogs.  Agent Nelson returned to the Princeton Avenue residence on July 14, 2023 to investigate that complaint.  On that visit, the dogs were not outside.  Agent Nelson knocked on the front door of the residence, but no one answered. Agent Nelson did not see or hear any dogs inside the residence.  Agent Nelson left a notice on the front door requesting the dogs' owner and/or caretaker contact Columbus Humane, but no one responded.

{¶ 10}  On August 8, 2023, Columbus Humane received a complaint stating the dogs were abandoned.  The next day, Columbus Humane received a complaint stating the dogs' owner had been evicted and left the dogs at the Princeton Avenue residence.  Agent Walker visited the residence on August 9, 2023 to assess the situation.

{¶ 11}  When Agent Walker arrived at the Princeton Avenue residence, she found the dogs on the back patio, tethered to a stair spindle, with only the blue tarp for a shelter.  On August 9, 2023, it "was extremely hot outside," specifically, 83 degrees Fahrenheit.  (Tr. Vol. II at 158.)  Due to the scant shelter provided by the tarp, the dogs were "exposed to the elements," which affected the dogs' safety and well-being. *Id.*

{¶ 12} Agent Walker knocked on the front door of the Princeton Avenue residence, but no one answered. A notice Columbus Humane had posted on August 8, 2023 about the dogs remained on the front door. At that point, Agent Walker decided to remove the dogs. Agent Walker left a notice that she had seized and impounded the dogs on the front door of the Princeton Avenue residence.

{¶ 13} Whitfield called Columbus Humane on August 10, 2023. Whitfield's conversation with Jessica Scott, chief humane agent of Columbus Humane, was recorded. During this telephone conversation, Whitfield admitted that she owned the two dogs removed from the Princeton Avenue residence.

{¶ 14} On August 23, 2023, the state charged Whitfield with violating R.C. 959.131(D)(3), a second-degree misdemeanor. R.C. 959.131(D)(3) provides:

> No person who confines or who is the custodian or caretaker of a companion animal shall negligently . . . [i]mpound or confine the companion animal without affording it, during the impoundment or confinement, with access to shelter from heat, cold, wind, rain, snow, or excessive direct sunlight if it can reasonably be expected that the companion animal would become sick or suffer in any other way as a result of or due to the lack of adequate shelter.

Whitfield pleaded not guilty.

{¶ 15} At a jury trial, the state called as witnesses Agents Walker, Nelson, Dundar, and Scott, who testified to the facts set forth above. The defense called as witnesses Whitfield, as well as Whitfield's daughter, Marisa Whitfield, and Whitfield's son, Raymond Whitfield.

{¶ 16} Whitfield testified that she put her dogs on her back patio when they needed fresh air. She stated that she did not let her dogs outside in bad weather, and the dogs usually stayed outside for no more than one hour. When the dogs were outside, someone was always at home to monitor the dogs. Whitfield explained that a nearby business that she had issues with made baseless complaints about her care and treatment of her dogs in retaliation against her.

{¶ 17} On August 9, 2023, Whitfield was in the process of moving out of the Princeton Avenue residence. Whitfield did not see the Columbus Humane agents remove the dogs because she had gone to the store with her daughter. According to Whitfield, her

neighbor was supposed to watch the dogs while she was at the store, but the neighbor "probably didn't pay no attention then." (Tr. Vol. II at 246.) Whitfield, consequently, did not know Columbus Humane had custody of the dogs until she found the notice Agent Walker had left.

{¶ 18} Marisa, Whitfield's daughter, testified that she and her brother were living at the Princeton Avenue residence during the summer of 2023. According to Marisa, the dogs were usually outside for two hours at a time. Marisa did not see the Columbus Humane agents remove the dogs on August 9, 2023 because she was at the store. Originally, Marisa stated she was at the store alone, and her mother was at work. On redirect examination, Marisa said her mother was at the store with her.

{¶ 19} Raymond, Whitfield's son, testified that the dogs were not often outside and usually stayed outside for "a[n] hour or less than a[n] hour." (Tr. Vol. III at 275.) Raymond, however, admitted that he did not live at the Princeton Avenue residence during the summer of 2023 and, instead, stayed at his girlfriend's home "a lot." *Id.* at 289. Raymond was not at the Princeton Avenue residence on August 9, 2023.

{¶ 20} The jury returned a verdict finding Whitfield guilty of violating R.C. 959.131(D)(3). In a judgment entered on April 25, 2024, the trial court convicted Whitfield of that violation and sentenced her to (1) pay a $75 fine and court costs, and (2) serve a 90-day jail term, with 90 days suspended, provided that Whitfield have no new convictions for serious traffic offenses, criminal offenses, or the same or similar offenses for five years.

## II. ASSIGNMENTS OF ERROR

{¶ 21} Whitfield now appeals the April 25, 2024 judgment, and she assigns the following two assignments of error for our review:

> [1.] APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION[S] 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

> [2.] THE ADMISSION OF OTHER ACTS TESTIMONY AND EVIDENCE VIOLATED EVIDENCE RULE 404 AND APPELLANT'S RIGHTS TO DUE PROCESS AND TO A FAIR TRIAL AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.

## III. LEGAL ANALYSIS

{¶ 22} By her first assignment of error, Whitfield argues that she did not receive effective assistance of trial counsel. Specifically, Whitfield contends that her trial counsel was ineffective because she (1) failed to object to the Columbus Humane agents' testimony regarding their visits to the Princeton Avenue residence prior to August 9, 2023, and (2) failed to object to Exhibit No. 10, a photograph of the back patio of the Princeton Avenue residence taken by Agent Nelson on July 1, 2023.

{¶ 23} To prevail on an ineffective assistance claim, a defendant must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. *Id.* at 687. To meet that requirement, the defendant must demonstrate that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *Id.* Counsel's conduct is deficient if it falls below an objective standard of reasonable representation. *Id.* at 688.

{¶ 24} If the defendant shows that counsel's performance was deficient, then the second prong of the *Strickland* test requires the defendant to prove prejudice to prevail. *Strickland* at 687. To demonstrate prejudice, the defendant must show that there is a "reasonable probability" that counsel's deficiency affected the outcome of the proceedings. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

{¶ 25} For a court to conclude trial counsel has provided ineffective assistance, the defendant must overcome a strong presumption that the challenged action might constitute sound trial strategy. *State v. Mohamed*, 2017-Ohio-7468, ¶ 18. Even questionable trial strategies do not rise to the level of ineffective assistance of counsel. *Id.*; *accord State v. Cepec*, 2016-Ohio-8076, ¶ 111, quoting *State v. Leonard*, 2004-Ohio-6235, ¶ 146 (" '[D]ebatable trial tactics do not establish ineffective assistance of counsel.' "). The decision to withhold an objection may fall within the realm of trial strategy. *State v. Robinson*, 2021-Ohio-3496, ¶ 53 (10th Dist.); *State v. R.I.H.*, 2019-Ohio-2189, ¶ 60 (10th Dist.). Experienced trial counsel understand that objecting to each potentially

objectionable event could actually act to their client's detriment. *State v. Johnson*, 2006-Ohio-6404, ¶ 140. Consequently, a single failure to object generally does not constitute ineffective assistance of counsel " 'unless the evidence sought is so prejudicial . . . that failure to object essentially defaults the case to the state.' " *Id.*, quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006). Alternatively, " 'defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice.' " *Id.*, quoting *Lundgren* at 774.

{¶ 26} The four Columbus Humane agents testified about seven visits to the Princeton Avenue residence between June 18 and August 9, 2023. Whitfield contends that her trial counsel should have objected to testimony regarding the first six visits on the grounds that the testimony was irrelevant and constituted impermissible other-acts evidence. Essentially, Whitfield asserts her counsel fell below the objective standard of reasonable representation by allowing the state to introduce evidence of violations of R.C. 959.131(D)(3) other than the one that occurred on August 9, 2023. Whitfield also faults her trial counsel for not objecting when Agents Nelson and Dundar testified that they could have filed charges against her for those violations.

{¶ 27} As we set forth above, R.C. 959.131(D)(3) states:

> No person who confines or who is the custodian or caretaker of a companion animal shall negligently . . . [i]mpound or confine the companion animal without affording it, during the impoundment or confinement, with access to shelter from heat, cold, wind, rain, snow, or excessive direct sunlight if it can reasonably be expected that the companion animal would become sick or suffer in any other way as a result of or due to the lack of adequate shelter.

Thus, to establish a violation of R.C. 959.131(D)(3), the state must prove that (1) a person who confined a companion animal, or a custodian or caretaker of a companion animal; (2) negligently impounded or confined the companion animal; (3) without affording the companion animal access to shelter from heat, cold, wind, rain, snow, or excessive direct sunlight; and (4) it can reasonably be expected that the companion animal would become sick or suffer in any other way as a result of or due to the lack of adequate shelter.

{¶ 28} The definition of "companion animal" includes "any dog or cat regardless of where it is kept." R.C. 959.131(A)(1). Although R.C. 959.131 does not define "confine," the ordinary, plain meaning of "confine" is " 'to hold within bounds' or 'to keep to a certain place or to a limited area.' " *State v. Sullivan*, 2014-Ohio-1687, ¶ 14 (12th Dist.), quoting *Webster's Third New International Dictionary* (1993). "A person acts negligently when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that the person's conduct may cause a certain result or may be of a certain nature." R.C. 2901.22(D).

{¶ 29} The state's witnesses testified to six visits between June 18 and August 8, 2023, but only Agent Nelson provided evidence from which a trier of fact could conclude a violation of R.C. 959.131(D)(3) had occurred during that period. According to Agent Nelson, when she arrived at the Princeton Avenue residence on July 1, 2023, the temperature was 82 degrees Fahrenheit. Agent Nelson found the two dogs tethered to a stair spindle on the back patio, with only the blue tarp for a shelter. When Agent Nelson knocked on the front door of the residence, no one answered.

{¶ 30} Given this evidence, a trier of fact could find that the dogs were negligently confined on the back patio without a shelter that could protect them from heat, cold, wind, rain, snow, or excessive direct sunlight. Due to the high heat, it could be reasonably expected that the dogs would suffer from prolonged exposure to the elements. Because no one answered Agent Nelson's knock, a trier of fact could infer that no one was at the residence to monitor the dogs' condition and allow them inside before the heat adversely affected them.

{¶ 31} During every other visit described in the testimony, the Columbus Humane agents did not testify to circumstances that amounted to a violation of R.C. 959.131(D)(3). Agent Walker could not testify to the weather conditions during her June 18, 2023 visit, so a trier of fact could not determine whether it could be reasonably expected that the dogs would suffer due to lack of an adequate shelter on that day. When Agent Nelson visited on July 11, 2023, the dogs were outside with Raymond Whitfield. Raymond could bring the dogs inside if inclement weather developed, thus negating any reasonable expectation that the dogs might suffer due to lack of adequate shelter. On July 14, 2023, Agent Nelson did not see the dogs at all when she visited the Princeton Avenue residence. Although Agent

Dundar testified that he saw the dogs outside when he arrived at the Princeton Avenue residence on June 20 and July 2, 2023, he did not testify that the dogs were confined on those days. Thus, none of these visits resulted in violations of R.C. 959.131(D)(3) that the state could introduce as potential other-acts evidence.

{¶ 32} During direct examination, Agent Nelson stated that she could have filed charges against Whitfield based on her observations. Agent Dundar testified that he could have filed charges against Whitfield "for the dogs not having shelter" at the time he spoke with Whitfield on July 2, 2023. (Tr. Vol. II at 204.) Based on what occurred during the agents' visits between June 18 and August 8, 2023, we conclude that both agents would have premised the charges on the circumstances Agent Nelson encountered during the July 1, 2023 visit.

{¶ 33} Therefore, the question before this court is whether Whitfield's trial counsel was ineffective for failing to object to testimony regarding Agent Nelson's July 1, 2023 visit, including Agents Nelson's and Dundar's testimony that they could have filed charges for the confinement of the dogs on July 1, 2023. We find it reasonable to conclude that defense counsel may have refrained from objecting because she was pursuing an alternative strategy. Defense counsel attempted to convince the jury that Whitfield took good care of her dogs throughout the time she owned them, and the charge against her only arose because a disgruntled neighbor complained unfairly about the dogs in retaliation against her. Whitfield testified that, in fact, the dogs were never outside when no one was at home; someone was always monitoring the dogs. Defense counsel obtained a concession from Agent Nelson that "[i]f someone is home and monitoring the dogs to be able to bring them in if needed, then" no outside shelter is required to comply with R.C. 959.131(D)(3). (Tr. Vol. II at 187.) Based on this evidence, defense counsel argued that Whitfield could not violate R.C. 959.131(D)(3), despite the lack of an outside shelter from heat, cold, wind, rain, snow, or excessive direct sunlight.

{¶ 34} Because strategy may have motivated defense counsel's decision not to object, Whitfield cannot satisfy the first prong of the *Strickland* test. *See State v. Rister*, 2023-Ohio-1284, ¶ 21 (4th Dist.), quoting *State v. Watts*, 2021-Ohio-4548, ¶ 10 (12th Dist.) ("A 'strategy, even if debatable, does not establish deficient performance or serve as the basis for an ineffective-assistance-of-counsel claim.' "). Nevertheless, even if we assume

that defense counsel was deficient by not objecting, Whitfield cannot prevail on her ineffective assistance claim because she fails to demonstrate prejudice.

{¶ 35} On August 9, 2023, Agent Walker found the two dogs tethered to a stair spindle on the back patio, with only the blue tarp providing shelter. Agent Walker testified that the blue tarp could not protect the dogs from heat, cold, wind, rain, snow, or excessive direct sunlight. Given the "extremely hot" temperature on August 9, 2023, it could be reasonably expected that the dogs would suffer due to lack of an adequate shelter. (Tr. Vol. II at 158.) Neither Whitfield nor her children were at the Princeton Avenue residence to monitor the dogs' condition. In light of this evidence establishing Whitfield's guilt, there is not a reasonable probability that but for counsel's failure to object the outcome of the trial would have been different. *See State v. Trimble*, 2009-Ohio-2961, ¶ 175 ("there is no likelihood that [the defendant] was prejudiced by the mention of his prior conviction because of the overwhelming evidence establishing his guilt"); *R.I.H.*, 2019-Ohio-2189, at ¶ 61 (10th Dist.) (concluding the defendant did not suffer prejudice as a result of his counsel's failure to object to other-acts evidence because "there [was] not a reasonable probability that but for counsel's failure to object the outcome of the trial would have been different"). Consequently, defense counsel's failure to object to evidence regarding the July 1, 2023 visit does not constitute ineffective assistance of counsel.

{¶ 36} Whitfield next argues that her trial counsel was ineffective for not objecting to Exhibit No. 10, a photograph of the back patio of the Princeton Avenue residence taken by Agent Nelson on July 1, 2023. Whitfield, however, fails to explicitly identify the evidentiary grounds on which her trial counsel should have objected. Whitfield only argues that "Exhibit [No.] 10 helped establish a pattern that Appellant habitually failed to maintain an adequate space for her dogs, despite the fact that a pattern is not required by O.R.C. 959.131(D)(3)." (Appellant's Brief at 13.) From this argument, we infer that Whitfield believes her trial counsel should have objected to Exhibit No. 10 on the basis of relevancy.

{¶ 37} We need not decide whether defense counsel was deficient in failing to object based on relevancy because Whitfield cannot show that Exhibit No. 10 prejudiced her. Exhibit No. 10 depicts essentially the same scene as Exhibits Nos. 11 and 12, which Whitfield does not challenge on appeal. Exhibits Nos. 11 and 12 are also photographs of the back patio of the Princeton Avenue residence taken on July 1, 2023 by Agent Nelson. Given the

similarity between Exhibits Nos. 10, 11, and 12, there is not a reasonable probability that the outcome of the trial would have been different if defense counsel objected to Exhibit No. 10. In the absence of prejudice, we conclude that Whitfield has not established that the failure to object to Exhibit No. 10 constitutes ineffective assistance of counsel.

{¶ 38} In sum, we conclude that Whitfield failed to prove that her trial counsel provided ineffective assistance of counsel. Accordingly, we overrule the first assignment of error.

{¶ 39} By her second assignment of error, Whitfield argues that the trial court committed plain error by admitting into evidence other-acts evidence. We disagree.

{¶ 40} To prevail under the plain-error standard, an appellant must show that an error occurred, the error was obvious, and the error affected the appellant's substantial rights. *State v. Drain*, 2022-Ohio-3697, ¶ 52. "To show that an error affected an appellant's substantial rights, he or she must show 'a reasonable *probability* that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims.' " (Emphasis in original.) *Id.*, quoting *State v. Rogers*, 2015-Ohio-2459, ¶ 22. The appellant, therefore, must establish " 'that the probability of a different result is "sufficient to undermine confidence in the outcome" of the proceeding.' " *Id.*, quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004), quoting *Strickland*, 466 U.S. at 694. An appellate court has discretion to notice plain error and will correct such error only under exceptional circumstances to prevent injustice. *State v. Jones*, 2020-Ohio-3051, ¶ 17.

{¶ 41} As we stated above, the other-acts evidence at issue here is the alleged violation of R.C. 959.131(D)(3) that occurred on July 1, 2023. Even if the trial court erred in admitting testimony regarding the July 1, 2023 incident, we conclude that error did not affect Whitfield's substantial rights because Whitfield failed to show a reasonable probability that the outcome of the trial would have been different without that evidence. Separate and apart from Agent Nelson's testimony regarding her July 1, 2023 visit, the record contains testimony from Agent Walker regarding the dogs' lack of adequate shelter on August 9, 2023. Whitfield, consequently, has not established the admission of evidence about the July 1, 2023 incident constituted plain error. Accordingly, we overrule Whitfield's second assignment of error.

## IV. CONCLUSION

{¶ 42} For the foregoing reasons, we overrule Whitfield's first and second assignments of error, and we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

BEATTY BLUNT and DINGUS, JJ., concur.

_____