[Cite as *State v. Taylor*, 2017-Ohio-8327.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-103 |
| | | (C.P.C. No. 16CR-1187) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Sandrine Taylor, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 26, 2017

**On brief:** *Ron O'Brien,* Prosecuting Attorney, *Barbara A. Farnbacher*, for appellee. **Argued:** *Barbara A. Farnbacher.*

**On brief:** *The Hemminger Law Firm, LLC* and *Chad K. Hemminger*, for appellant. **Argued:** *Chad K. Hemminger.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Sandrine Taylor, appeals from a judgment entry of the Franklin County Court of Common Pleas finding her guilty, pursuant to jury verdict, of one count of theft. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} By indictment filed March 3, 2016, plaintiff-appellee, State of Ohio, charged Taylor with one count of theft in violation of R.C. 2913.02, a fifth-degree felony. The indictment alleged Taylor stole merchandise from Walmart valued at or more than $1,000 and less than $7,500. Taylor entered a plea of not guilty.

{¶ 3} At a jury trial commencing January 30, 2017, Shaundreika Reed, an asset protection associate at the Walmart located at 3900 Morse Road, testified that on

February 18, 2016, she was working the night shift when she saw two women on the store's surveillance video who were randomly selecting items without checking prices and putting them into two shopping carts, behavior which she found "suspicious." (Jan. 31, 2017 Tr. Vol. I at 55.) Reed said she watched on the surveillance video as the two women picked up blankets and apparel and then moved to the store's grocery section, filling their carts with "random food," again without checking prices. (Tr. Vol. I at 55.) Once the women arrived in the pet department, Reed testified they began bagging the items in their cart into clear bags they had obtained from the grocery department. The two women remained in the pet aisle for nearly two hours.

{¶ 4} Reed testified that the Walmart on Morse Road has approximately 40 surveillance cameras set up throughout the store but that the view of the two women was partially obscured when they were in the pet aisle, so Walmart sent another asset protection associate out on the floor to watch the women bagging up the items in their cart. When the two women emerged from the pet aisle, their two shopping carts were full of bagged merchandise that had been placed inside of large tote bags. Once the two women arrived at the registers at the front of the store, one of the women selected a few items from her cart and paid for a total of 18 items, which cost a total of approximately $65, leaving the rest of the merchandise in their carts. Reed then watched as the two women walked past the last point of sale with the two carts full of merchandise for which they did not pay.

{¶ 5} As the women were attempting to exit the store, Reed approached them along with two other asset protection associates and four officers from the Columbus Division of Police. Reed said she then learned the two women were a mother and daughter. She identified Taylor in court as the mother from the pair of women. Reed testified Taylor apologized to her for what she had just done. Reed also said the daughter claimed that she had paid for all the remaining items.

{¶ 6} Reviewing the surveillance footage, Reed was able to determine the women entered the store around 4:30 p.m. and attempted to leave around 11:30 p.m., meaning they were in the store for seven hours. Reed testified that the women continued to place items into their carts during that entire seven-hour window and that at no time did either one of them pay for the items other than the 18 they selected and paid for when they tried

to leave the store. The state played the surveillance footage for the jury and also admitted into evidence still photographs of Taylor and her daughter entering the store. The surveillance footage showed the two women placing items into each other's carts and moving items from one cart to the other. Reed testified the two women were together for almost the entire seven hours with the exception of one of them leaving for a few minutes to grab an item and return.

{¶ 7} Taylor never produced a receipt for the remaining items she claimed she had paid for. Reed testified that Walmart has a "smart system" in its computers that allows the asset protection team to see which items were purchased from the store at what times. (Tr. Vol. I at 83.) Using that smart system, Reed was able to verify that neither Taylor nor her daughter had purchased the remaining items in the carts. Reed also provided the surveillance footage to police.

{¶ 8} After police apprehended Taylor and her daughter, Reed said Walmart's asset protection team took the remaining items in the carts and generated a print out of all the items that were not paid for and their accompanying retail prices. Reed testified that there were 375 items that the two women had not paid for totaling $2,356.10.

{¶ 9} Jennifer Smith, another asset protection officer for Walmart, testified that she went onto the sales floor to observe Taylor and her daughter once the view of them on the surveillance cameras became obstructed. Smith testified she watched as Taylor and her daughter bagged merchandise into the clear bags from the grocery department and then took large tote bags from another department of the store and began filling those tote bags with the merchandise in their carts. Smith said she stood approximately ten feet away from the women while they were in the pet aisle bagging up the merchandise.

{¶ 10} Stanford Speaks, an officer with the Columbus Division of Police, testified that he was working special duty at the Walmart on Morse Road on the night of February 18, 2016. Officer Speaks testified that one of the asset protection officers at Walmart alerted him to Taylor's suspicious behavior in the store so he went into the asset protection office and observed on the surveillance footage Taylor and her daughter bagging up "a tremendous amount" of merchandise. (Feb. 1, 2017 Tr. Vol. II at 162.) Officer Speaks said police officers get involved with someone suspected of stealing merchandise once that person walks past the last point of sale without paying for the

merchandise. Officer Speaks testified that when Taylor and her daughter walked past the last point of sale, he came out of the asset protection office and approached the two women, attempting to escort them into the office; however, Officer Speaks said Taylor's daughter "became very agitated" and would not cooperate. (Tr. Vol. II at 166.) Further, Officer Speaks testified the daughter kept saying she had paid for everything.

{¶ 11} At the close of the state's evidence, defense counsel made a Crim.R. 29 motion for acquittal. The trial court denied the motion.

{¶ 12} Sanvera Winbush, Taylor's 26-year-old daughter, testified she was shopping with her mother at Walmart on February 18, 2016, something she said they do together frequently. Winbush testified she typically spends "[a]t least five hours" at Walmart when she shops there with her mother. (Tr. Vol. II at 195.) Winbush said she paid for $412 worth of merchandise although she could not produce a receipt for the items. Winbush was convicted of theft in relation to this incident.

{¶ 13} David Bola, a neighbor of Taylor's, testified he has lived near Taylor since 2002. Bola testified he has known Taylor to be honest and truthful. However, Bola admitted he knew nothing about the incident at Walmart, was not an eyewitness, was not present at the scene, and had not seen the surveillance video.

{¶ 14} Another neighbor, Aaron Robinson, Sr., testified he has lived near Taylor for approximately five years and that he finds Taylor to be "very trustworthy." (Feb. 2, 2017 Tr. Vol. III at 36.) Robinson also had no knowledge of the incident at Walmart, was not present at the scene, was not an eyewitness, and had not seen the surveillance video.

{¶ 15} Finally, Taylor testified in her own defense. She testified that her daughter had paid for everything in her shopping cart except the dog food and the water and that her daughter had showed her a receipt. Taylor admitted she was in the pet aisle with her daughter for approximately two hours where they were bagging up merchandise. Taylor said that by the time she met her daughter in the pet aisle, her daughter had already paid for all the merchandise in her cart.

{¶ 16} Following deliberations, the jury returned a verdict finding Taylor guilty. The trial court proceeded immediately to sentencing and imposed a sentence of two years of community control. The trial court journalized Taylor's conviction and sentence in a February 3, 2017 judgment entry. Taylor timely appeals.

## II.  Assignments of Error

{¶ 17} Taylor assigns the following errors for our review:

[1.] The trial court committed plain reversible error by permitting the prosecutor to elicit testimony from the co-defendant on cross-examination regarding the co-defendant's conviction from a no contest plea because said actions constituted prosecutorial misconduct and deprived Defendant-Appellant of her due process right to a fundamentally fair trial under the Fourteenth Amendment to the U.S. Constitution.

[2.] The trial court erred by not permitting the Defendant-Appellant to question the co-defendant on redirect about the circumstances of her no contest plea and conviction after the Plaintiff-Appellee opened the door by introducing the conviction.

[3.] The trial court erred in denying Defendant-Appellant's motion for a judgment of acquittal due to the Plaintiff-Appellee's failure to present sufficient evidence to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

[4.] Defendant-Appellant's conviction was against the manifest weight of the evidence.

## III.  First Assignment of Error – Prosecutorial Misconduct

{¶ 18} In her first assignment of error, Taylor argues the trial court erred in permitting the state to elicit testimony from Winbush, Taylor's daughter, regarding her conviction from the incident at Walmart as a result of a no contest plea.  Taylor asserts the state's cross-examination of Winbush amounted to prosecutorial misconduct.  The parties agree Taylor did not object to this line of questioning at trial and thus has waived all but plain error.  *State v. Jackson*, 92 Ohio St.3d 436, 444 (2001).  An appellate court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice.  *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 58 (10th Dist.), citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 139.

{¶ 19} For an error to be a "plain error" under Crim.R. 52(B), it must satisfy three prongs: (1) there must be an error, meaning a deviation from a legal rule, (2) the error must be "plain," meaning an "obvious" defect in the trial proceedings, and (3) the error

must have affected "substantial rights," meaning the error must have affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶ 20} During the state's cross-examination of Winbush, the state asked Winbush about her claim that she had paid for some of the merchandise. The following exchange took place:

> Q: Okay. Now, in your criminal proceedings, you actually received a guilty verdict for theft in this case, right?
>
> A: Yes, ma'am.
>
> Q: Okay. And that guilty conviction was just earlier this fall, probably - - maybe winter?
>
> A: Yes, ma'am.
>
> Q: Okay. So you basically suggest that your mom didn't know you had paid for some of the items?
>
> A: No, I paid for the items. She knew. I showed her my receipt.
>
> Q: Okay. You paid for the items, but you received a guilty conviction for this?
>
> A: Yes, I did.
>
> Q: Okay. And that's because there was no evidence to support what you were suggesting, correct?
>
> A: No.
>
> Q: Well, you were unable to produce at any point in time the phantom receipt?
>
> A: Yes, I don't have my receipt.

(Tr. Vol. II at 251-52.)

{¶ 21} Taylor argues this colloquy amounts to the state improperly impeaching Winbush's credibility by erroneously attempting to introduce evidence of Winbush's no contest plea entered pursuant to negotiations with the state. Evid.R. 410 prohibits the use

of a no contest plea "in any civil or criminal proceeding against the defendant who made the plea." Evid.R. 410(A)(2). *See also* Crim.R. 11(B)(2).

{¶ 22} " '[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Wilkerson*, 10th Dist. No. 01AP-1127, 2002-Ohio-5416, ¶ 38, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Thus, the state's conduct on cross-examination is not grounds for reversal unless the defendant has been denied a fair trial. *State v. Ndiaye*, 10th Dist. No. 13AP-964, 2014-Ohio-3206, ¶ 14, citing *State v. Maurer*, 15 Ohio St.3d 239, 266 (1984). Moreover, because Taylor did not object to the alleged instances of prosecutorial misconduct, Taylor has waived all but plain error. *State v. Daniels*, 10th Dist. No. 14AP-326, 2015-Ohio-2649, ¶ 29, citing *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, ¶ 82. Under a plain error standard, a reviewing court asks whether a defendant " 'would not have been convicted in the absence of the improper conduct.' " *State v. Elson*, 10th Dist. No. 13AP-554, 2014-Ohio-2498, ¶ 43, quoting *State v. Saleh*, 10th Dist. No. 07AP-431, 2009-Ohio-1542, ¶ 68.

{¶ 23} Though Taylor argues Evid.R. 410(A) prohibited the state's use of Winbush's no contest plea on cross-examination, the plain language of Evid.R. 410(A) prohibits the use of a no contest plea in a future "civil or criminal proceeding *against the defendant who made the plea*." (Emphasis added.) Evid.R. 410(A)(2). The present case was not a proceeding against Winbush; she was merely a witness in her mother's criminal trial, and thus Evid.R. 410(A) does not apply.

{¶ 24} Moreover, to the extent Taylor argues the questions regarding Winbush's criminal conviction were an improper means of impeachment, we note that Evid.R. 609(A)(3) deems admissible evidence that a witness has been convicted of a crime "if the crime involved dishonesty or false statement." Theft is a crime of dishonesty and, thus, can be used for impeachment. *State v. Anderson*, 10th Dist. No. 08AP-1071, 2009-Ohio-6566, ¶ 25. In the colloquy above, the state elicits from Winbush the fact of her conviction, not the method of her conviction through no contest plea. *See State v. Mapes*, 19 Ohio St.3d 108, 111 (1985) (stating "Crim.R. 11(B)(2) and Evid.R. 410 prohibit only the admission of a no contest plea. These rules do not prohibit the admission of a conviction entered upon that plea when such conviction is made relevant by statute"). Because

Taylor called Winbush as a witness in an attempt to show Taylor did not know the items in the carts had not been paid for, Evid.R. 609 permitted the state to introduce evidence of Winbush's conviction of a theft offense as a method of impeaching her credibility. Thus, this line of questioning was not improper and did not render Taylor's trial unfair.

{¶ 25} For these reasons, Taylor does not demonstrate error, let alone plain error, from this line of questioning. We overrule Taylor's first assignment of error.

## IV. Second Assignment of Error – Evidentiary Rulings

{¶ 26} In her second assignment of error, Taylor argues the trial court erred by not permitting defense counsel on redirect examination to ask Winbush about the circumstances of her no contest plea and conviction. Generally, the admission or exclusion of evidence lies in the sound discretion of the trial court, and we will not disturb that decision absent an abuse of discretion. *State v. Darazim*, 10th Dist. No. 14AP-203, 2014-Ohio-5304, ¶ 16, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 27} At a sidebar conference during the trial shortly after the colloquy discussed in the first assignment of error, the parties discussed the risk that Winbush's testimony would infringe on her attorney-client privilege stemming from her own criminal conviction. Defense counsel then argued that because the state had insinuated that Winbush was convicted "because [she] couldn't produce any evidence" that she was innocent, the state's questioning "opens the door for [Winbush] to be allowed to discuss the plea negotiations and the penalties that were illustrated to her" so she could explain her decision to plead no contest. (Tr. Vol. II at 256.) The trial court instructed defense counsel not to mention the no contest plea so as not "to draw any more attention to it." (Tr. Vol. II at 262.) Defense counsel then asked whether he could at least solicit from Winbush that her conviction was for a misdemeanor rather than a felony, and the trial court ruled defense counsel could not do so because of defense counsel's failure to object to the line of questioning when it came up during Winbush's cross-examination. Defense counsel then offered the following proffer for the record:

> Defense just wants to state for the record that Sanvera Winbush has been asked about a conviction she received as a

result of this case. And a follow-up question to that, "Isn't the reason you were convicted because you had no evidence to present?" was then posed to her.

Defense believes that opens the door for the defense to at least follow up and ask for a little more elaboration on what prompted her to plead to this, given the fact that it wasn't necessarily a lack of evidence but, rather, it was for her to avoid the consequences of a felony when she was given the opportunity to accept a misdemeanor.

Furthermore, the defense would submit for the record that, when she's accused of theft out of the same incident, it's proper for the defense to be allowed to elicit what level she plead to when that conviction was offered for impeachment purposes.

(Tr. Vol. II at 264-65.)

{¶ 28} On appeal, Taylor argues the trial court abused its discretion in not allowing defense counsel to ask Winbush further questions on redirect examination about her decision to plead no contest. Pursuant to Evid.R. 611(A), "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Additionally, as the Supreme Court of Ohio has stated, "[t]he control of redirect examination is committed to the discretion of the trial judge and a reversal upon that ground can be predicated upon nothing less than a clear abuse thereof." *State v. Wilson*, 30 Ohio St.2d 199, 204 (1972).

{¶ 29} Taylor does not explain how the trial court abused its discretion in this regard other than to assert it was prejudicial for the jury to learn Taylor's co-defendant had already received a conviction arising out of the same incident. However, because Winbush was a defense witness, the impeachment of her credibility and the fact of her conviction arising out of the same incident were unquestionably relevant to the state's case. Moreover, even if we were to construe the trial court's decision to restrict the scope of redirect examination as error, there is no indication that this exchange or Winbush's testimony at large had any impact on Taylor's guilty verdict. Even without Winbush's

testimony, there was ample evidence that Taylor left the Walmart without paying for a majority of the items in her and Winbush's carts. Accordingly, Taylor does not demonstrate any prejudice from the trial court's evidentiary ruling in this regard. *State v. Hughes*, 10th Dist. No. 14AP-360, 2015-Ohio-151, ¶ 41, quoting *Darazim* at ¶ 16 (stating " '[a] trial court has broad discretion over the admission or exclusion of evidence, and a reviewing court generally will not reverse an evidentiary ruling absent an abuse of discretion that materially prejudices the affected party' "). Accordingly, Taylor does not demonstrate the requisite prejudice needed for a finding of plain error.

{¶ 30} We find no abuse of discretion in the trial court's decision not to allow defense counsel to expand on the circumstances of Winbush's prior conviction during redirect examination. We overrule Taylor's second assignment of error.

## V.  Third Assignment of Error – Crim.R. 29 Motion for Acquittal

{¶ 31} In her third assignment of error, Taylor argues the trial court erred in denying her Crim.R. 29 motion for acquittal. More specifically, Taylor asserts the state did not present sufficient evidence to prove the elements of theft.

{¶ 32} Crim.R. 29(A) provides that the court, "on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Review of the denial of a Crim.R. 29 motion and the sufficiency of the evidence apply the same standard. *State v. Fugate*, 10th Dist. No. 12AP-194, 2013-Ohio-79, ¶ 5, citing *State v. Turner*, 10th Dist. No. 04AP-364, 2004-Ohio-6609, ¶ 8. Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 33} The offense of theft requires the state to prove beyond a reasonable doubt that Taylor, with the purpose to deprive the owner of property, knowingly obtained control over the property without the consent of the owner or through deception, threat,

or intimidation. R.C. 2913.02. Additionally, to bring the offense into the fifth-degree felony range, the state is required to prove that the value of the property is between $1,000 and $7,500. R.C. 2913.02(B)(2).

{¶ 34} Taylor argues the state presented insufficient evidence of the value of the property stolen from Walmart. Value of stolen property "is determined in accordance with R.C. 2913.61." *State v. Loch*, 10th Dist. No. 02AP-1065, 2003-Ohio-4701, ¶ 35, citing *State v. Massey*, 10th Dist. No. 99AP-1355 (Nov. 28, 2000). As relevant here, R.C. 2913.61(E)(1) provides that "[w]hen the property involved is personal property held for sale at wholesale or retail, the price at which the property was held for sale is prima-facie evidence of its value." At trial, Reed, Walmart's asset protection associate, testified that the value of the items Taylor took from the store without paying was $2,356.10. This is sufficient evidence of the value of the property.

{¶ 35} To the extent Taylor argues the state presented insufficient evidence of the value of the items she personally stole because the state did not attempt to assign certain items to Taylor and certain items to Winbush, we note that the jury was instructed on complicity. Pursuant to R.C. 2923.03, the complicity statute, "[a] charge of complicity may be stated in terms of this section, or in terms of the principal offense." R.C. 2923.03(F). This court has previously held that evidence sufficient to convict the principal offender is also sufficient to convict an offender under a theory of complicity. *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 52. The state presented evidence that Taylor and Winbush entered the store together, spent hours placing items into the carts, switched merchandise into each others carts, and left the store together with a total of 375 items for which they did not pay. Thus, there was sufficient evidence that Taylor and Winbush acted collectively and the total value of the stolen items is sufficient to prove value for purposes of bringing the offense into the range of a fifth-degree felony. We overrule Taylor's third assignment of error.

## VI. Fourth Assignment of Error – Manifest Weight of the Evidence

{¶ 36} In her fourth and final assignment of error, Taylor argues her conviction is against the manifest weight of the evidence.

{¶ 37} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent,

credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 38} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 39} Taylor argues her conviction is against the manifest weight of the evidence because Taylor testified she believed all the items had been paid for and did not intend to steal anything from Walmart. Additionally, Taylor asserts that her daughter's testimony corroborates her version of events. Thus, Taylor argues the jury lost its way in determining she acted purposely.

{¶ 40} A person acts with a particular purpose when "it is [his or her] specific intention to cause a certain result." R.C. 2901.22(A). "The law has long recognized that intent, lying as it does within the privacy of a person's own thoughts, is not susceptible of objective proof." *State v. Garner*, 74 Ohio St.3d 49, 60 (1995), citing *State v. Carter*, 72 Ohio St.3d 545, 554 (1995). The trier of fact may consider the entire set of circumstances

surrounding the event and infer intent from those facts. *State v. Loughman*, 10th Dist. No. 10AP-636, 2011-Ohio-1893, ¶ 47, citing *State v. Grant*, 67 Ohio St.3d 465, 478 (1993).

{¶ 41} The state presented Reed's and Smith's testimony regarding Taylor's behavior while in the store, as well as the surveillance footage showing Taylor and Winbush fill up their carts and then move to another area of the store to bag merchandise into large tote bags before approaching the register, selecting only a few items to pay for, and attempting to leave the store with two shopping carts full of merchandise. The jury could conclude from this evidence that Taylor acted to purposely deprive Walmart of property when she left the store without paying for most of the items in the two carts. Though Taylor testified she thought her daughter had paid for all the remaining items, it was within the province of the jury to disbelieve Taylor's self-serving testimony. Thus, considering all the evidence, we cannot say the jury lost its way in discounting Taylor's and Winbush's testimony in favor of the ample evidence provided by the state.

{¶ 42} Considering all of the evidence together, the jury did not clearly lose its way in concluding Taylor was guilty of the offense of theft when she left Walmart with two shopping carts of merchandise without paying. After an independent review of the record, we find Taylor's conviction is not against the manifest weight of the evidence, and we overrule Taylor's fourth and final assignment of error.

## VII. Disposition

{¶ 43} Based on the foregoing reasons, the trial court did not plainly err in permitting the state to ask a defense witness about her criminal conviction stemming from the same incident, the trial court did not abuse its discretion in limiting the scope of redirect examination, the trial court did not err in denying Taylor's Crim.R. 29 motion for acquittal, and the manifest weight of the evidence supports Taylor's conviction. Having overruled Taylor's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK, P.J., and SADLER, J., concur.