[Cite as *State v. Robinson*, 2021-Ohio-3496.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 20AP-128 |
| v. | : | (C.P.C. No. 19CR-732) |
| Jaylan J. Robinson, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 30, 2021

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, *Seth L. Gilbert*, for appellee.

**On brief:** *Timothy D. Young*, Public Defender, and *R. Jessica Manungo*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1} Defendant-appellant, Jaylan J. Robinson, appeals the February 14, 2020 judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to a jury verdict, and imposing sentence. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} On February 12, 2019, a Franklin County Grand Jury indicted appellant on three criminal counts: two counts of felonious assault in violation of R.C. 2903.11, both felonies of the second degree; and one count of kidnapping in violation of R.C. 2905.01, a felony of the first degree. All of the counts contained firearm specifications. On January 13, 2020, the matter proceeded to trial.

{¶ 3} At trial, Officer Joseph Bogard of the Columbus Division of Police testified he was on patrol with his partner on December 29, 2018 at approximately 7:30 p.m. when he

was dispatched on a report of shots fired in the area of Main Street and Carpenter Street in Columbus. Shortly after driving out of the police substation, Officer Bogard and his partner were approached by a man, later identified as M.M., who informed the officers he had been shot. Officer Bogard exited the police cruiser, turned on his body camera, and called for a medic. Officer Bogard observed a gunshot wound to M.M.'s leg and a similar wound around his shoulder area. Officer Bogard laid M.M. on the sidewalk and began gathering information from him while rendering first aid.

{¶ 4} An audiovisual recording from Officer Bogard's body camera was played at trial. Officer Bogard testified that, as heard in the recording, M.M. informed officers on the scene he was on Oakwood Avenue when he was shot by an individual he identified as "Chubbs." M.M. also informed officers that he was a drug user and the people who shot him sold drugs.

{¶ 5} Officer Alan Bennett of the Columbus Division of Police testified he was on patrol at approximately 7:30 p.m. on December 29, 2018 when he received a report of shots being fired in the area of Oakwood Avenue in Columbus. Officer Bennett was in the vicinity of an apartment complex on Oakwood Avenue when a woman directed him to come to the apartments. In front of one apartment building in the complex, Officer Bennett observed several shell casings scattered around the building's open doorway. Officer Bennett proceeded inside the apartment building to conduct a safety sweep of the building.

{¶ 6} Once inside the Oakwood apartment building, Officer Bennett walked upstairs and knocked on the door of one of the apartments ("the apartment"). According to Officer Bennett, the door opened from the force of the knock, which indicated to him the apartment was not secure. Alongside another officer, Officer Bennett conducted a sweep of the apartment, discovering that the back door of the apartment was unlocked. Officer Bennett did not observe a firearm either around the apartment building or inside the apartment. Officer Bennett secured the apartment, preventing others from accessing it while the investigation was ongoing.

{¶ 7} Detective Gary Cooper of the Columbus Division of Police Crime Scene Search Unit testified he was called to the scene of a shooting at the apartment complex on Oakwood Avenue at approximately 11:00 p.m. on December 29, 2018. Detective Cooper testified that a search warrant had been obtained for the apartment. Detective Cooper's

partner took 44 pictures of the scenes where M.M. was found, the shell casings outside the apartment building, and inside the apartment.  Detective Cooper found a total of 13 spent shell casings, all of which were .40 caliber, outside the apartment building.

{¶ 8}    Paul Giovis testified that on December 29, 2018 he was inside his apartment on Bryden Road in Columbus when he heard the sound of multiple gunshots fired in a short amount of time outside his apartment.  Giovis testified that his apartment was close to Oakwood Avenue.  Shortly after hearing the gunshots, he looked outside and observed an individual running from area where the shots had sounded.

{¶ 9}    Dominique Edwards testified he was approached by police on February 22, 2019 about a shooting involving M.M. at the apartment.  At the time, he told police he was not present at the apartment on December 29, 2018 and needed to speak to his lawyer.  At trial, however, Edwards admitted he was at the apartment on that date and claimed that his February 22, 2019 statement to police was a lie.  Edwards agreed he lied to police at that time because he did not want to get in trouble.

{¶ 10}  Edwards testified he was charged as a co-defendant with appellant.  Edwards was charged with felonious assault with a gun specification, kidnapping with a gun specification, and having a weapon under disability.  After being charged, he spoke with prosecutors and signed a defendant's agreement with plaintiff-appellee, State of Ohio.  As provided in the agreement, Edwards agreed to testify truthfully, completely, and accurately in any legal proceedings in which he was called as a witness.  In exchange for his cooperation, the state agreed to resolve Edward's' case by having him plead guilty to having a weapon under disability.  The agreement did not contain any terms regarding Edward's' potential sentence.  Edwards testified he received a sentence of probation following his plea of guilty to the charge of having weapons under disability.

{¶ 11}  Edwards testified that on December 28, 2018, the day before the shooting at the apartment, he was in a car wreck which resulted in his right arm being broken and placed in a soft cast.  On December 29, 2018 at approximately 6:00 p.m., Edwards arrived at the apartment.  According to Edwards, individuals used drugs at the apartment.  Edwards denied selling drugs.

{¶ 12} An individual whom Edwards identified as Thomas was present at the apartment when Edwards arrived, but left shortly thereafter.  Edwards testified that two of

his friends, appellant and M.M., entered the apartment after him. Edwards stated that M.M. used drugs.

{¶ 13} Edwards testified that at some point that evening, appellant and M.M. became involved in an altercation. According to Edwards, appellant was the aggressor. During the altercation, Edwards witnessed appellant hit M.M. with a frying pan in the apartment's kitchen. M.M. fell to the floor of the kitchen and was held on the floor by appellant. M.M. broke free from appellant and ran out of the apartment through the front door. Appellant, armed with a semiautomatic handgun, pursued M.M. out of the apartment. Edwards, who had remained in the apartment, heard many gunshots fired outside in rapid succession. Edwards left the apartment through the back door because he did not know what was going on and did not want to be in trouble.

{¶ 14} M.M. testified that on December 28, 2018, he was in a car with an individual he identified as "D2," a.k.a. Dominique Edwards,[1] when they became involved in a car wreck. As a result of the wreck, Edwards suffered a broken arm and misplaced his gun. M.M. ran from the scene of the wreck because Edwards had crack, heroin, and a gun on his person at the time and M.M. did not want to become involved with police. After the wreck, Edwards offered to pay M.M. to locate his missing gun. M.M. returned to search for the gun but was unable to locate it.

{¶ 15} On December 29, 2018, M.M. came to the apartment. At the time, he was in the practice of using drugs, including marijuana and opiates. He used drugs at the apartment and occasionally spent the night there. M.M. stated there were a lot of people who came in and out of the apartment to purchase and use drugs. Several individuals were already present in the apartment including Edwards, an individual M.M. knew as "Poochie," whom he believed was Edwards' brother, and appellant, whom M.M. identified at trial. M.M. stated he was unaware of appellant's real name in 2018, but instead knew him as "Chubbs."

{¶ 16} When M.M. entered the apartment, Edwards asked M.M. for the gun that was misplaced following the car wreck, but M.M. responded he did not find it. Appellant called M.M. into the restroom, placed a gun to M.M.'s head, and asked him where Edwards' gun

---

[1] We note that appellant concedes the individual referred to by M.M. as "D2" is, in fact, Dominique Edwards. (Appellant's Brief at 3.) As the record supports this conclusion, we hereinafter refer to "D2" as Edwards.

was located. Poochie started punching M.M. and then appellant began hitting M.M. while Edwards continued to ask for his gun. At several points during the altercation, M.M. stated he was "[e]scorted" by his assailants from room to room at "[g]unpoint" and "knifepoint." (Tr. Vol. II at 260.) M.M. testified Edwards, Poochie, and appellant all worked together to assault him and move him throughout the apartment. According to M.M., Poochie hit him at the direction of Edwards and appellant.

{¶ 17} M.M. testified he was taken into the kitchen where he was hit on the head with a frying pan by Poochie. Appellant slapped M.M. several times. Poochie grabbed a knife and started threatening M.M. with it. Poochie then hit M.M. in the face causing blood to come out of his mouth and nose.

{¶ 18} Because he was bleeding on the floor, M.M. was taken out of the kitchen and moved near the front door of the apartment. Poochie began mixing up chemicals including bleach to put on M.M.'s cuts. M.M. was afraid that his assailants were going to make him drink the bleach. When M.M. noticed the room was empty, he ran out the front door of the apartment, jumped down multiple flights of steps, and exited the apartment building. Appellant chased M.M., asking M.M. where he was going. After M.M. ran out the front door of the apartment building, appellant stood on the steps outside the building and fired multiple shots from a semiautomatic handgun at M.M. M.M. testified that he was fleeing for his life, running in a zigzag pattern away from the apartment building. Two hollow-point bullets went through M.M.'s leg and one hollow-point bullet went through his arm.

{¶ 19} After he was shot, M.M. flagged down Columbus police officers and was taken to Grant Hospital. His bones were broken in three different places and he had three different surgeries. M.M. had a metal plate with seven screws placed in his shoulder where he was shot. He suffered nerve damage in his arm and was unable to lift his wrist. He had a stent on his wrist for three months as he worked to regain feeling in his hand.

{¶ 20} M.M. testified he was approached by police both in January and February 2019 and asked to make an identification of his assailants using photo arrays. In January, M.M. identified appellant as one of his assailants using the photo array and stated that appellant shot him three times. In February, M.M. identified Edwards as one of his assailants and stated that Edwards told appellant to shoot him because he did not find Edwards' gun.

{¶ 21} M.M. testified that after the shooting he attempted to "open a dialogue" with Edwards because he "didn't want this guy to look for me, my girlfriend at the time, my kids." (Tr. Vol. II at 272.) M.M. stated that, at the time, he was "just trying to keep everything cool * * * because * * * before that situation, I never had a problem with none of them." (Tr. Vol. II at 275.) M.M. testified that when he communicated with Edwards, he was concerned about retaliation from Edwards because of the missing gun.

{¶ 22} Detective Steve Miller of the Columbus Division of Police Felony Assault Unit testified he administered two photo arrays to M.M. on January 31, 2019. Detective Miller testified he did not know the identity of the suspect when he was administering the photo arrays. Detective Miller showed M.M. the first photo array, which did not contain a photo of appellant. Upon reviewing the first photo array, M.M. stated that his assailants were not among the pictured individuals. Detective Miller then showed M.M. another photo array and M.M. immediately identified one of the individuals as "Chubbs" and stated that this individual shot him three times.

{¶ 23} Detective Kenneth Trivette of the Columbus Division of Police Felony Assault Unit testified he administered a photo array to M.M. on February 21, 2019. Detective Trivette testified he did not know the identity of the suspect when he was administering the photo array. M.M. identified one individual and told Detective Trivette that this individual told appellant to shoot him because was unable to locate the individual's gun. The photo array key reflected the identity of the individual M.M. identified as Edwards.

{¶ 24} Additionally, the parties stipulated at trial to the testimony of an expert in firearms and ballistic analysis who stated within a reasonable degree of scientific certainty that all the shell casings recovered from the scene outside the apartment building were fired from the same firearm.

{¶ 25} On January 16, 2020, the trial court heard closing arguments. The state moved to dismiss one of the counts of felonious assault, which the trial court granted. On the same date, the jury returned verdicts of guilty on the remaining count of felonious assault, the count of kidnapping, and the two firearm specifications. On February 14, 2020, the trial court conducted a sentencing hearing. At the hearing, the court imposed the following sentence: 7 years on the count of felonious assault in addition to a mandatory consecutive 3 year firearm specification, and 4 years on the count of kidnapping in addition

to a mandatory consecutive 1 year firearm specification. The sentences for felonious assault and kidnapping were ordered to be served concurrently to each other and consecutive to the firearm specifications, for a total term of imprisonment of 11 years. On February 14, 2020, the trial court filed a judgment entry reflecting appellant's conviction.

## II. Assignments of Error

{¶ 26} Appellant appeals and assigns the following four errors for our review:

[I.] THE TRIAL COURT'S FINDING OF GUILTY TO THE FELONIOUS ASSAULT WITH GUN SPECIFICATION IN VIOLATION OF [R.C.] 2903.11 AND TO KIDNAPPING WITH A GUN SPECIFICATION IN VIOLATION OF [R.C.] 2905.01 IS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.

[II.] THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL BECAUSE THE EVIDENCE PRESENTED BY THE STATE WAS INSUFFICIENT TO SUPPORT A CONVICTION OF FELONIOUS ASSAULT AND KIDNAPPING.

[III.] THE TRIAL COURT ERRED WHEN IT FAILED TO INSTRUCT THE JURY, RULE ON DEFENSE COUNSEL'S OBJECTION, AND CORRECT THE PROSECUTION'S ERROR DURING CLOSING ARGUMENT.

[IV.] DEFENDANT WAS EFFECTIVELY DENIED HIS CONSTITUTIONAL RIGHT TO ASSISTANCE OF COUNSEL.

## III. First and Second Assignments of Error—Sufficiency and Manifest Weight

{¶ 27} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus. In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine whether, in viewing the evidence admitted at trial in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain the conviction. *Id. See State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 16 ("In a sufficiency of the evidence inquiry, appellate courts do not assess

whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction.").

{¶ 28} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *Thompkins* at 386. Because a motion under Crim.R. 29 requires a court to consider the sufficiency of the evidence, we apply the same standard of review to the appeal of a denial of a Crim.R. 29 motion as in a challenge to the sufficiency of the evidence. *State v. Nelson*, 10th Dist. No. 19AP-548, 2020-Ohio-4657, ¶ 11, citing *State v. Kearns*, 10th Dist. No. 15AP-244, 2016-Ohio-5941, ¶ 44.

{¶ 29} A challenge to the manifest weight of the evidence requires a different review. "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *State v. Cassel*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25. Thus, a conviction supported by sufficient evidence may still be reversed because it is against the manifest weight of the evidence. *State v. Jenkins*, 10th Dist. No. 18AP-324, 2018-Ohio-4988, ¶ 20.

{¶ 30} In reviewing a challenge to the manifest weight of the evidence, an appellate court cannot merely substitute its view for that of the trier of fact but, instead, must " 'review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Williams*, 10th Dist. No. 16AP-540, 2017-Ohio-5598, ¶ 24, quoting *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 12, citing *Thompkins* at 387. In conducting such review, "we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 21. The power to reverse a conviction on grounds that it was against the manifest weight of the evidence " 'should be exercised only in the exceptional case in which the evidence

weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 31} We begin by addressing whether appellant's convictions were supported by sufficient evidence. First, appellant was convicted of felonious assault in violation of R.C. 2903.11 with a firearm specification.[2] R.C. 2903.11(A)(2) provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." M.M. testified appellant followed him outside the apartment building and fired multiple shots from a semiautomatic handgun at him. M.M. testified he was hit by three of the shots and hospitalized as a result of his injuries. This evidence, viewed in a light most favorable to the prosecution, is sufficient to establish the essential elements of the offense of felonious assault with a firearm specification beyond a reasonable doubt.

{¶ 32} Second, appellant was convicted of kidnapping in violation of R.C. 2905.01 with a firearm specification.[3] R.C. 2905.01(A) provides that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * (3) [t]o terrorize, or to inflict serious physical harm on the victim or another." M.M. testified he was "escorted" throughout the apartment by his assailants, including appellant, from room to room at "[g]unpoint" and "knifepoint." (Tr. Vol. II at 260.) After he was assaulted in the bathroom, M.M. stated that he "ended up stumbling into the bedroom" at which point "they took me into the kitchen" and continued to assault him. (Tr. Vol. II at 258.) M.M. also stated he was moved from the kitchen to the area near the front door of the apartment. M.M. testified that "once the room had cleared, that's when I opened the door. [Appellant] seen that, and he was, like, 'Where you going?' So I took off, and he took off behind me." (Tr. Vol. II at 258.) M.M. stated that as he fled from the apartment building, appellant fired

---

[2] We note that R.C. 2941.145(A) provides: "Imposition of a three-year mandatory prison term upon an offender under division (B)(1)(a)(ii) of section 2929.14 of the Revised Code is precluded unless the indictment * * * [specifies] that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

[3] We note that R.C. 2941.141 provides: "Imposition of a one-year mandatory prison term upon an offender under division (B)(1)(a)(iii) of section 2929.14 of the Revised Code is precluded unless the indictment * * * specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense."

shots at him. This evidence, viewed in a light most favorable to the prosecution, is sufficient to establish the essential elements of the offense of kidnapping with a firearm specification beyond a reasonable doubt. Accordingly, we find the trial court did not err by overruling appellant's motion for acquittal pursuant to Crim.R. 29 because sufficient evidence supported the convictions. *Nelson* at ¶ 1.

{¶ 33} Next, we turn to appellant's arguments that his conviction was against the manifest weight of the evidence. Appellant does not dispute that M.M. was shot, but rather argues the evidence presented at trial was inconsistent and, therefore, did not establish beyond a reasonable doubt that appellant was the individual who shot M.M.

{¶ 34} It is well-established that a defendant is not entitled to reversal on grounds of manifest weight merely because inconsistent evidence is presented at trial. *State v. Freeman*, 10th Dist. No. 19AP-181, 2020-Ohio-3381, ¶ 49; *State v. Cervantes*, 10th Dist. No. 18AP-505, 2019-Ohio-1373, ¶ 48; *Columbus v. Beasley*, 10th Dist. No. 17AP-629, 2019-Ohio-719, ¶ 34. Nor is a conviction against the manifest weight of the evidence because the finder of fact believed the state's version of events over the defendant's version. *State v. S.A.A.*, 10th Dist. No. 17AP-685, 2020-Ohio-4650, ¶ 80, citing *State v. Gale*, 10th Dist. No. 05AP-708, 2006-Ohio-1523, ¶ 19. The jury, as finder of fact, is in the best position to consider inconsistencies in testimony and resolve them accordingly, believing all, some, or none of the witness's testimony. *State v. Taylor*, 10th Dist. No. 17AP-103, 2017-Ohio-8327, ¶ 37; *State v. Antill*, 176 Ohio St. 61, 67 (1964). Furthermore, "the testimony of one witness, if believed by the jury, is enough to support a conviction." *State v. Hood*, 10th Dist. No. 15AP-656, 2015-Ohio-5373, ¶ 11, citing *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42.

{¶ 35} Appellant argues that M.M. and Edwards gave inconsistent accounts of the events of December 29, 2018. Specifically, appellant points out that the testimony of Edwards and M.M. differed significantly with regard to Edwards' involvement and the presence of Edwards' brother, Poochie. Appellant also argues that identification is at issue because neither Edwards nor M.M. actually witnessed appellant shoot M.M. Appellant claims that M.M.'s identification of appellant as the shooter was based solely on a deduction from the fact that Edwards' gun was missing at the time of the shooting.

{¶ 36} Contrary to appellant's arguments that M.M. and Edwards testified inconsistently, both M.M. and Edwards were consistent in their testimony that shots were fired after appellant ran out of the apartment after M.M. Edwards testified that M.M. broke free from appellant and fled the apartment. Appellant pursued M.M. out of the apartment with a gun and then Edwards heard multiple shots fired. M.M. testified he heard appellant shout at him and give chase when he attempted to leave the apartment. After M.M. ran out of the apartment building with appellant in pursuit, he was shot multiple times.

{¶ 37} Furthermore, M.M. consistently and at several different points following the shooting identified appellant as the individual who shot him. Immediately after being shot, M.M. informed responding officers that he had been shot by an individual he knew as "Chubbs," whom he identified as appellant at trial. M.M. also immediately identified appellant as the shooter when he was shown his picture in a photo array. At trial, M.M. repeatedly, both under direct and cross-examination, identified appellant as the individual who shot him. Furthermore, M.M.'s testimony about the manner of the shooting is supported by the presence of shell casings outside the apartment building. Although neither M.M. nor Edwards testified they directly saw appellant point and fire a gun at M.M., the jury was able to weigh their testimony, including any reasonable inferences, and reach the conclusion that appellant was the individual who fired the shots that struck M.M. *See State v. Baatin*, 10th Dist. No. 11AP-286, 2011-Ohio-6294, ¶ 13 (finding it was "within the province of the jury" to "believe [the victim's] consistent identification of [Baatin] as the man who stabbed her" where it was "aware of" certain "factual inconsistencies"); *State v. Rhoades*, 10th Dist. No. 19AP-93, 2020-Ohio-2688, ¶ 30 (finding conviction not against manifest weight of the evidence where jury was aware of credibility issue and was able to consider it in weighing testimony); *State v. Moore*, 10th Dist. No. 19AP-464, 2021-Ohio-1379, ¶ 76 (finding conviction not against manifest weight of the evidence where "jury was able to view [the witness] as she testified and assess for itself the veracity of her testimony regarding her identification of [Moore]"); *State v. Steward*, 10th Dist. No. 19AP-28, 2020-Ohio-4553, ¶ 80.

{¶ 38} Furthermore, appellant points to M.M.'s communication with Edwards after the shooting and his admitted fear of retaliation from Edwards to argue that M.M. lacked credibility. M.M. testified that after the shooting he attempted to "open a dialogue" with

Edwards because he "didn't want this guy to look for me, my girlfriend at the time, my kids." (Tr. Vol. II at 272.)  At the time, M.M. stated he was "just trying to keep everything cool * * * because * * * before that situation, I never had a problem with none of them."  (Tr. Vol. II at 275.)  M.M. testified that at the time he communicated with Edwards, he was concerned about retaliation from Edwards because of the missing gun.  At the time of trial, M.M. also described his fear of retaliation from individuals connected to Edwards.  Here, the jury was aware of M.M.'s statements regarding his communication with and fear of retaliation from Edwards.  Considering these statements in the context of M.M.'s other testimony and his repeated identification of appellant as the shooter, we cannot find the jury lost its way in crediting testimony that appellant was the individual who shot M.M.  *See State v. Anderson*, 10th Dist. No. 10AP-302, 2010-Ohio-5561, ¶ 19 (finding conviction was not against the manifest weight of the evidence where the "jury was aware of [the victim's] past as he testified about his prior convictions and time spent in prison" and the fact that he "did not select [Anderson] from the photo array shown to him the day after the stabbing").

{¶ 39} Finally, to the extent that appellant challenges Edwards' credibility on the basis that he entered into a prosecution agreement with the state in which he was required to testify, the jury was aware of this issue and was able to use this knowledge in assessing Edwards' credibility.  Such determination is within the province of the jury.  *See State v. Rankin*, 10th Dist. No. 10AP-1118, 2011-Ohio-5131, ¶ 30, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 56 (finding where jury was aware of witness's plea deal including favorable sentencing recommendation, the jury was "free to determine whether [the witness's] testimony was credible in light of the consideration she received for testifying").  The jury was also in the best position to weigh Edwards' credibility in light of the differences between his and M.M.'s testimony regarding the nature and extent of Edwards' involvement in the attack on M.M.  *See State v. Reed*, 10th Dist. No. 09AP-84, 2009-Ohio-6900, ¶ 26 (finding conviction not against the manifest weight of the evidence where jury was aware that a witness "was charged with the same offense as [Reed] and that she potentially faced a long prison term" in addition to the jury's awareness that the witness "sought a break on her own case and wanted to 'look good' in her testimony").

{¶ 40} Considering appellant's arguments related to credibility and inconsistencies in the context of our review of the totality of the record, weighing the evidence and

considering the credibility of the witnesses, we cannot find the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. Therefore, we conclude appellant's convictions are not against the manifest weight of the evidence.  Accordingly, we overrule appellant's first and second assignments of error.

## IV. Third Assignments of Error—Closing Argument

{¶ 41}  In his third assignment of error, appellant asserts that errors were committed with regard to the jury's instructions and the state's closing argument. Specifically, appellant contends the state's rebuttal closing arguments "may have confused the jury regarding the burden of proof."  (Appellant's Brief at 15.)  Appellant argues the trial court failed to rule on an objection to the state's argument and failed to further instruct the jury to disregard the assistant prosecutor's statements or clear any confusion resulting from such statements.

{¶ 42}  During the rebuttal portion of closing arguments, the following dialogue took place:

> [Assistant Prosecutor]:  [M.M.'s] identification of this defendant is consistent from the very time he encounters the Columbus Police after being shot multiple times by this defendant.
>
> Listen to the body cam from the officer. Who shot you? Who was involved? This defendant, he says, Chubbs, and D2, Dominique Edwards. Right from the get-go, right when he's in the pains of all the injuries that he sustained from this defendant, he names him without hesitation.
>
> He names him at the hospital when he gives a statement to Columbus police detective, Scott Polgar.
>
> He picks him then out of a photo array. D2, Dominique Edwards; Chubbs, the defendant, he picks them right away. Consistency. Consistency, ladies and gentlemen.
>
> Did anyone testify otherwise that it was not this defendant? The answer is: No.
>
> Is there any other evidence that was presented in this case that would compromise [M.M.'s] identification of this defendant?
>
> [Appellant's Counsel]: Your Honor, I'm going to object to this. May I approach?

The Court: You may.

(Tr. Vol. IV at 378.)   Following appellant's counsel's objection, the following proceedings occurred outside of the presence of the jury:

> [Appellant's Counsel]: I've known [the assistant prosecutor] for a long time, but this is burden shifting, and I don't want it to get too far afield.
>
> [Assistant Prosecutor]: I'm saying there's no evidence. Even under cross-examination, there was no evidence where he said otherwise.
>
> [Appellant's Counsel]: I didn't hear that, "cross-examination." I just don't want this going too far.
>
> [Assistant Prosecutor]: All right.

(Tr. Vol. IV at 379.)   Following this discussion, the assistant prosecutor continued presenting his rebuttal, stating: "When [M.M.] is on the witness stand under cross-examination, did he ever come off his identification one iota of this defendant?  And the answer is: No. No." (Tr. Vol. IV at 379.)   The trial court did not explicitly rule on the objection raised by appellant's counsel to the rebuttal argument.

{¶ 43} Following closing arguments, the trial court offered the following instruction to the jury: "The defendant is presumed innocent unless guilt is established beyond a reasonable doubt.  The defendant must be acquitted of an offense unless the State produces evidence which convinces you beyond a reasonable doubt of every essential element of the offense."  (Tr. Vol. IV at 387-88.)  Furthermore, the trial court instructed the jury that the "evidence does not include the indictment or opening statements or closing arguments of counsel.  The opening statements and closing arguments of counsel are designed to assist you.  They are not evidence."  (Tr. Vol. IV at 389.)  Finally, the trial court instructed that "[i]t is not necessary that the defendant take the witness stand in his own defense.  The defendant has a constitutional right not to testify.  The fact that the defendant did not testify must not be considered for any purpose."  (Tr. Vol. IV at 391.)

{¶ 44} Here, appellant argues the trial court should have altered the jury instructions to disregard the assistant prosecutor's statements.  However, appellant did not

request any additional instruction for the jury, nor did counsel raise such an objection to the jury instructions in the trial court.

> {¶ 45} Crim.R. 30(A) provides, in pertinent part, as follows:
>
> > At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests.
> >
> > On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.

Thus, pursuant to Crim.R. 30(A), objections to jury instructions should be made before the jury retires to consider its verdict. *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 164. Because appellant failed to object to the instructions or otherwise request additional instructions following closing argument, he has forfeited all but plain error. *Id.* at ¶ 165 ("Noncompliance with Crim.R. 30(A) waives all but plain error."); *State v. D.H.*, 10th Dist. No. 16AP-501, 2018-Ohio-559, ¶ 44; *State v. Stevenson*, 10th Dist. No. 17AP-512, 2018-Ohio-5140, ¶ 20; *State v. R.I.H.*, 10th Dist. No. 18AP-93, 2019-Ohio-2189, ¶ 52.

{¶ 46} "Plain error exists when an error is plain or obvious and affects a substantial right." *State v. Harmon*, 10th Dist. No. 18AP-965, 2020-Ohio-590, ¶ 17, citing *State v. Griffin*, 10th Dist. No. 10AP-902, 2011-Ohio-4250, ¶ 13. "In order to demonstrate plain error, the defendant must show: (1) an error that is plain on the record, i.e., a deviation from a legal rule that constitutes an obvious defect in the trial proceedings; and (2) that such error affected substantial rights, i.e., there was a reasonable probability that the error affected the outcome of the trial." *State v. Barrie*, 10th Dist. No. 15AP-848, 2016-Ohio-5640, ¶ 32, citing *State v. J.M.*, 10th Dist. No. 14AP-621, 2015-Ohio-5574, ¶ 27.

{¶ 47} " 'As a general rule, a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged.' " *State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, ¶ 17, quoting *State v. Adams*, 62 Ohio St.2d 151, 153 (1980). "[A]n appellate court must review the instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions." *Id.* at ¶ 17, citing *Adams* at paragraph three of the syllabus.

{¶ 48} Here, we find appellant suffered no prejudice from the jury instructions as the jury was properly instructed that opening and closing arguments do not constitute evidence. Furthermore, the jury was properly instructed on the burden of proof. We presume that the jurors followed such instructions. *State v. Webster*, 10th Dist. No. 20AP-171, 2021-Ohio-3218, ¶ 50. As a result, we cannot, under these facts and circumstances, find that the verdict was altered by the assistant prosecutor's statements during closing arguments. *See State v. Fudge*, 10th Dist. No. 16AP-821, 2018-Ohio-601, ¶ 52 (finding appellant was not prejudiced by prosecutor's statements in closing arguments because the court properly instructed the jury that opening and closing arguments are not evidence).

{¶ 49} Appellant also argues the trial court erred by failing to rule on the objection to the state's rebuttal or clear any confusion resulting from the rebuttal. When a trial court fails to rule on a motion or objection, such motion or objection is generally deemed to have been implicitly overruled. *See Perkins v. Ohio Dept. of Transp.*, 65 Ohio App.3d 487, 499 (10th Dist.1989); *State v. Scruggs*, 10th Dist. No. 02AP-621, 2003-Ohio-2019, ¶ 14; *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 44 (finding that "[w]here a trial court fails to rule upon a motion for new trial and instead enters a final judgment, the trial court often will be deemed to have implicitly overruled the motion"); *State v. Hillman*, 10th Dist. No. 06AP-1230, 2008-Ohio-2341, ¶ 64; *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 223 (1994). Even if we were to find that the trial court erred by failing to explicitly rule on appellant's objection, we find such error to be harmless. As we have previously stated, the trial court properly instructed the jury regarding the burden of proof and the lack of evidentiary value in counsel's closing arguments. Thus, we find appellant suffered no prejudice from the trial court's failure to explicitly rule on the objection.

{¶ 50} Reviewing the totality of the record and the jury instructions, we cannot find the trial court erred under these circumstances. Accordingly, we overrule appellant's third assignment of error.

## V. Fourth Assignment of Error—Effective Assistance of Counsel

{¶ 51} In his fourth assignment of error, appellant asserts he was denied his constitutional right to effective counsel. We apply a two-part test to evaluate claims of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984);

*State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989). "First, the defendant must show that counsel's performance was deficient. * * * Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland* at 687. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph three of the syllabus. "Judicial scrutiny of counsel's performance must be highly deferential [and] [b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689; *Bradley* at 141.

{¶ 52} Appellant argues he was denied effective representation because trial counsel failed to object to the state's leading questions throughout Edwards' testimony. During the state's questioning of Edwards, appellant's trial counsel asked to approach, whereupon the following dialogue occurred outside of the presence of the jury:

> [Appellant's Counsel]: I understand this guy is a little difficult, but I would just ask that [the assistant prosecutor] not try to lead so much. I understand –
>
> [Assistant Prosecutor]: I mean, at some point in time, if he really breaks down, we're going to have to ask to approach and ask him to be called as a Court's witness. It's going to be like pulling teeth a little bit here.
>
> [The Court]: Okay.

(Tr. Vol. II at 221-22.) Ultimately, appellant's trial counsel did not raise an objection to the state's questioning of Edwards.

{¶ 53} We note that the decision to not object may have been a reasonable trial strategy. We have previously held it is a valid trial strategy for counsel to decline to object to testimony where an objection would have drawn undue attention to the testimony in question. *State v. C.W.*, 10th Dist. No. 15AP-1024, 2018-Ohio-1479, ¶ 53, quoting *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 90, quoting *United States v. Payne*, 741 F.2d 887, 891 (7th Cir.1984) ("A competent trial attorney may well eschew objecting * * * in order to minimize jury attention to the damaging material."). (Internal quotations omitted.) Trial counsel may also have decided not to raise an objection on the

determination that it was unlikely to succeed. *See State v. Tibbetts*, 92 Ohio St.3d 146, 167-68 (2001) ("Counsel is not ineffective for choosing, for tactical reasons, not to pursue every possible trial objection.").

{¶ 54} Here, however, it is unnecessary to determine whether trial counsel performed deficiently because we conclude appellant fails to demonstrate prejudice. Apart from the state's questioning of Edwards, the jury heard testimony from M.M. regarding the identity of his assailants and the nature of the events which occurred on December 29, 2018. In light of the evidence establishing appellant's guilt, as reflected in our analysis of appellant's challenge to the sufficiency and manifest weight of the evidence, there is not a reasonable probability that but for counsel's failure to object the outcome of the trial would have been different. *See State v. DeJoy*, 10th Dist. No. 10AP-919, 2011-Ohio-2745, ¶ 43 (finding appellant could not satisfy prejudice prong of the *Strickland* test because outcome of trial would not have been altered if trial counsel had objected to leading questions asked by the assistant prosecuting attorney); *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, ¶ 175 (finding "there is no likelihood that [Trimble] was prejudiced by the mention of his prior conviction because of the overwhelming evidence establishing his guilt"); *R.I.H.* at ¶ 61; *State v. Valentine*, 10th Dist. No. 14AP-893, 2016-Ohio-277, ¶ 24 (finding trial counsel's failure to object to testimony did not amount to ineffective assistance of counsel where the defendant "failed to demonstrate a reasonable probability that, but for his counsel's deficient representation, the result of the proceedings would have been different, as there is overwhelming evidence of [Valentine's] guilt in this case"). As a result, even if we were to find appellant's counsel performed deficiently by failing to object, we cannot agree that appellant suffered prejudice as a result of such failure. Accordingly, we overrule appellant's fourth assignment of error.

## VI. Conclusion

{¶ 55} Having overruled appellant's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT and JAMISON, JJ., concur.

————————————